STATE OF WEST VIRGINIA *v.* HOBART HATFIELD AND BARNES OSBORNE

(No. 7212)

Submitted May 24, 1932.   Decided June 7, 1932.

*W. H. D. Preece,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

Woods, Judge:

Hobart Hatfield, Barnes Osborne, Enoch Darby and Bud Bailey were jointly indicted (1) for breaking and entering a certain building in Mingo County, belonging to Red Jacket Consolidated Coal & Coke Company and used as a store building, with intent to commit larceny; (2) for entering said building without breaking, etc.; and (3) for the larceny of certain merchandise of the total value of $419.34. Darby and Bailey confessed to the breaking and entering and the removal of the merchandise. Hatfield and Osborne, however, stood trial, denying any knowledge of the theft. The state, after introducing her evidence in chief, elected to proceed on the third count. The present writ of error is prosecuted to a judgment entered on a jury verdict of "guilty as charged in the within indictment."

Defendants state that they left home (Amico, Raleigh County), in Osborne's Essex coach, early April 15, 1930, for Red Jacket, a distance of 130 miles, in search of work; that about four o'clock, P. M., and while in the vicinity of Red Jacket, Darby and Bailey obtained Osborne's car to go to Matewan to "look around" while Osborne and Hatfield walked up the hollow a mile and a quarter to certain coal operations to inquire about work; that Osborne and Hatfield waited from dark until midnight for the return of Darby and Bailey; that upon their arrival Osborne inquired concerning the merchandise which he found stacked in the back of his car, and was advised that it had been purchased at a sale; thereupon Osborne resumed his place at the wheel, Hatfield and Darby in the front seat with him, and Bailey, the smallest, located himself upon the merchandise. After the parties had travelled about 18 miles in the direction of home, they were flagged by state police, who checked the license plates with the registration card. During this interrogation, an occupant of the car threw something over the bank, which one of the officers found to be a pearl handle

32 caliber pistol. Thereupon the four men were placed under arrest and directed to alight, and the car searched without any protest on the part of its former occupants. The search revealed a large quantity of merchandise, later found to belong to Red Jacket Consolidated Coal & Coke Company, and two shot guns, a brace and bit and a jimmie belonging to the defendants.

Without reciting further facts, it suffices to say that the evidence clearly supports the verdict, providing the reference to the goods found in the car was proper. Defendants contend that the latter was inadmissible, it appearing that the officers did not have a search warrant for the car. They cite *State* v. *Andrews*, 91 W. Va. 720, 114 S. E. 257, and *State* v. *Wills*, 91 W. Va. 659, 114 S. E. 261, in support of their proposition. The latter case holds that an unlawful search amounts to an unreasonable search within the meaning of our Constitutional inhibition. The state admits that the officers did not have a search warrant for Osborne's automobile, or have knowledge or information that the occupants thereof had committed any crime, at the time they stopped it. The officers do, however, testify that they were patrolling the road at the point of the search because of numerous robberies in the vicinity and information that a car loaded with liquor would pass through from Mingo to Logan County that night; and that they were stopping all cars, and after checking the certificate of registration and ascertaining whether or not the driver had a permit to operate a motor vehicle, were, in the absence of suspicious circumstances, directing them to proceed without further questioning.

The duty to suppress crime and to arrest violators of the law, necessarily carries with it the right to stop persons for the purpose of identification. And this logically extends to those traveling on the highways in motor and other vehicles. It has always been the custom for cordons to be thrown out in the vicinity of a crime, or where an offender is supposed to be in hiding, and to stop all persons for purpose of identification, in order that felons may be apprehended. This is a necessary and reasonable restraint for protection of

our personal liberty. "The right of personal liberty consists in the power of locomotion, of changing situation, of moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due process of law." Voorhees, Law of Arrests, p. 1, citing 1 Bl. Com. 135; *Butchers' Union, etc. Co.* v. *Crescent City, etc. Co.,* 111 U. S. 746, 28 L. Ed. 585; *In Matter of Jacobs,* 98 N. Y. 98. The same author also states at page 7 that "The assurance of personal liberty does not license any person to be free from restraint; on the contrary, it demands such necessary restraint of persons as will insure the utmost amount of personal liberty to each, for the safety and well-being of society are paramount to individual liberty." Since the advent of the motor age, the legislature, which has primarily the power, subject to constitutional restrictions, to control and regulate the use of public highways, has invoked a system of registration for all motor vehicles for the benefit and protection of the public. In addition to license plates, Code 1931, 17-6-2, provides for a registration certificate which shall at all times be carried in each vehicle, "subject to examination upon demand by any proper officer." And under section 27, article 8, of the same chapter, authority is given to all members of the department of public safety to render necessary assistance to the road commission in seeing that the highways are properly policed and that only those duly authorized operate vehicles thereon. This protects automobile owners in their property, and against unauthorized drivers. If a party, upon inquiry, can show proper credentials he may proceed; if not, he may be taken into custody or directed to appear before a proper officer for hearing. The public is thus accorded additional security. A law abiding citizen cannot have a valid objection to the inconvenience of being stopped, so long as he is accorded courteous treatment. The officers, under the existing circumstances, were warranted in stopping Osborne's automobile for purposes of identification; otherwise, the enforcement of law and order would be greatly hampered.

The search in the instant case was not made by the officers until after the pistol had been retrieved; in other words, after knowledge of a violation of the law in their presence. This warranted the arrest of the four men, and the subsequent search of the car. *State* v. *Adams,* 103 W. Va. 77, 136 S. E. 703.

The remaining ground of error relates to the form of the verdict. Defendants contend that the verdict of guilty "as charged in the within indictment" is not responsive under the state's election to try on the third count, and the court's instruction to disregard the first and second and consider only the third count. While, as argued by defendant, a general verdict is in effect a finding of guilty on all counts of the indictment, it is apparent from the record and instructions that only the third count was in issue. There could be no misunderstanding.

Perceiving no error, we affirm the judgment.

*Affirmed.*