HOWARD EVERETT CANNON, Defendant Below, Appellant, v. THE STATE OF DELAWARE, Plaintiff Below, Appellee.

(*March* 7, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Ralph S. Baker* for appellant.

*Paul R. Reed,* Assistant Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 47, 1960.

SOUTHERLAND, C. J.:

Defendant Cannon's appeal raises questions touching the construction and the constitutionality of the *Uniform Arrest Act* of 1951, now 11 *Del. C.* § 1902.

The facts are these:

On the evening of July 4, 1959, Mrs. Lewis Smith was returning by car to her home on Route 404, two miles north of Bridgeville. She observed a car ahead of her, later shown to be driven by Cannon. She followed him for some time. He was driving erratically. She finally passed him. Coming to her home, she turned into her driveway. Cannon followed. He descended from his car and accused her of excessive speed. He was obviously intoxicated. Mr. Smith and his brother Leon Smith also saw Cannon. At the suggestion of Leon Smith the State police were notified. Two officers came to the Smith home. They learned what had happened and observed Cannon's condition. They then took him, against his will, to the Bridgeville Police Station. This action was taken pursuant to the Uniform Arrest Act above referred to.

At the police station Cannon voluntarily submitted to the intoximeter test and to physical tests. The tests confirmed the fact of intoxication. He was then arrested and charged with operating a motor vehicle under the influence of liquor, and was tried and convicted in the Court of Common Pleas of Sussex County. On appeal to the Superior Court of Sussex County he was again convicted. He appeals to this Court.

In the court below Cannon moved to suppress the evidence of the results of the sobriety tests made by the State police on the ground that he had been illegally arrested and that the exclusionary rule was applicable. *Rickards v. State*, 6 *Terry* (45 *Del.*) 573, 77 *A.* 2d 199. The court denied the motion, and this ruling is assailed as error.

The Uniform Arrest Act provides as follows:

"(a) A peace officer may stop any person abroad who he has reasonable ground to suspect is committing, has committed, or is about to commit a crime, and may demand of him his name, address, business abroad, and where he is going.

"(b) Any person so questioned who fails to identify himself or explain his actions to the satisfaction of the officer may be detained and further questioned and investigated.

"(c) The total period of detention provided for by this section shall not exceed two hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime."

Defendant's argument upon the construction of this act runs as follows:

The statute does not permit forcible detention; it contemplates that the citizen detained must voluntarily submit to the detention. Therefore, he says, a forcible detention must be justified by a lawful arrest, and no lawful arrest was made in this case since his offense was a misdemeanor not committed in the view of the officers. *Rickards v. State, supra.*

This construction approaches the absurd, since it makes the statute meaningless. No legislative act is required to authorize a citizen voluntarily to assist a police investigation.

But, says defendant, a forcible detention is in fact an "arrest", regardless of what it is called, because the accepted definition of an arrest is a restraint of liberty of the person. This definition may be, in general, correct, but it does not affect the legislative power to alter the definition, as Judge Carey noted in the case of *State v. Bowden* (July 21, 1959, unreported). By 11 *Del. C.* § 1901 an arrest is defined as "the

taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime." A "detention" under the statute is not recorded on the police records and hence in practical effect lacks one of the normal characteristics of an arrest. This is for the protection of the citizen who is detained for questioning.

The Uniform Arrest Act is of relatively recent origin. In 1939 a committee of the Interstate Commission on Crime was appointed to draft such an act. In 1941 the act so drafted was adopted in New Hampshire and Rhode Island, and in 1951 in Delaware. Whether it is now in effect in other states we are not informed. The act grew out of the inadequacies of the common law to meet the modern needs for questioning and detaining suspects. Such detention has long been a police practice, generally sanctioned by the courts in cases of felony, but perhaps of doubtful validity in many cases of misdemeanor. *Cf. Wilson v. State,* 10 *Terry* 37, 50, 109 *A.* 2d 381, 388, involving a felony. For a discussion of these matters see *Warner, "The Uniform Arrest Act",* 28 *Va. L. R.* 315.

Defendant's construction of the statute is manifestly incorrect.

Defendant asserts finally that if the act authorizes a "detention" without an "arrest" (as it clearly does), then it is unconstitutional. The assertion is not supported by argument. Presumably defendant means that a citizen so detained is deprived of his liberty without due process of law. This argument is also without merit. In a recent case we sustained the constitutionality of the act, though the attack was upon grounds somewhat narrower than defendant's apparent contention here. *De Salvatore v. State, Del.,* 163 *A.* 2d 244, 249.

To set the question at rest we expressly reaffirm our holding in the *De Salvatore* case. The act is clearly a reasonable exercise of the police power and is in our opinion

constitutional. See the comments on constitutional questions in the article above cited. 28 *Va. L. R.* 322-323.

The judgment of the Superior Court is affirmed.