[Crim. No. 13090. Second Dist., Div. Two. June 5, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. CHESTER W. WEGER, Defendant and Respondent.

586

Byron B. Gentry, City Prosecutor, and David Press, Assistant City Prosecutor, for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and Melvin L. Jensen, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Allen I. Neiman, A. L. Wirin, Fred Okrand and Laurence R. Sperber for Defendant and Respondent.

McCOY, J. pro tem.*—In June 1966 the People filed a complaint in the Municipal Court for the Pasadena Judicial District, charging defendant with a violation of subdivision (e) of section 647 of the Penal Code. The trial court sustained defendant's demurrer and ordered the case dismissed. (Pen. Code, § 1008.) On appeal by the People the Appellate Department of the Superior Court for Los Angeles County affirmed the judgment of dismissal and certified the case to this court. We ordered the case transferred in order to settle an important question of law.

The only question before us is the constitutionality of section 647, subdivision (e), of the Penal Code. That section provides in relevant part: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a

---

*Assigned by the Chairman of the Judicial Council.

reasonable man that the public safety demands such identification."[1] We are not concerned with the guilt or innocence of defendant. We hold that the law is constitutional and that the judgment dismissing the action must be reversed.

We note at the outset that there is "a presumption in favor of constitutionality, and the invalidity of a legislative act must be clear before it can be declared unconstitutional." (*Patton* v. *La Bree,* 60 Cal.2d 606, 608-609 [35 Cal.Rptr. 622, 387 P.2d 398].) "As pointed out in *People* v. *Superior Court* (1937), 10 Cal.2d 288, 298 [4] [73 P.2d 1221], 'judicial decisions abound with declarations to the effect that all presumptions and intendments favor the validity of statutes; that mere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration of its invalidity. . . .' [Citations.]" (*In re Cregler,* 56 Cal.2d 308, 311 [14 Cal.Rptr. 289, 363 P.2d 305].) "Statutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional. (*County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [55 P.2d 206]; 45 Cal.Jur.2d, Statutes, § 115, p. 624.)" *Ehrlich* v. *Municipal Court,* 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].) "Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." *In re Huddleson,* 229 Cal.App.2d 618, 621 [40 Cal.Rptr. 581].)

*Section 647, subdivision (e) is not*
*Constitutionally Vague and Uncertain*

Defendant contends that section 647, subdivision (e), of the Penal Code, is vague and uncertain and fails to establish clearly defined standards of guilt and thus deprives him and all others of due process of law. In our opinion this contention is not tenable.

The Supreme Court of the United States "has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding

---

[1]Section 647 was adopted in 1961. (Stats. 1961, ch. 560.) Subdivision (e) of this section was considered in *People* v. *Bruno,* 211 Cal.App.2d Supp. 855 [27 Cal.Rptr. 458], and in *People* v. *Wilson,* 238 Cal.App.2d 447 [48 Cal.Rptr. 55], and was noted in *People* v. *Kraps,* 238 Cal.App.2d 675 [48 Cal.Rptr. 89]. However, neither of these cases deal with the constitutionality of the section.

and practices. . . .' *United States* v. *Petrillo,* 332 U.S. 1, 7, 8 [91 L.Ed. 1877, 1882, 1883, 67 S.Ct. 1538].'' (*Roth* v. *United States,* 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304].) ■ ''A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded.'' (*Boyce Motor Lines* v. *United States* (1952) 342 U.S. 337 [96 L.Ed. 367, 371, 72 S.Ct. 329].)

Similarly it has been held in this state that ''The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids . . . ''a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'' ' (*Lanzetta* v. *New Jersey,* 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct. 618] ; see also *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) Such also is the law of the State of California. (*People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974].)'' (*In re Newbern,* 53 Cal.2d 786, 792 [350 P.2d 116].)

In *In re De La O,* 59 Cal.2d 128, 153 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], it is said : ''Words used in a statute are ordinarily to be construed according to the context and 'the approved usage of the language' (Civ. Code, § 13), and 'a statute is sufficiently certain if it employs words of long usage or with a common law meaning, ''notwithstanding an element of degree in the definition as to which estimates might differ'' ' (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 60 [8] [216 P.2d 859].)'' In *People* v. *Victor,* 62 Cal.2d 280, 298 [42 Cal.Rptr. 199, 398 P.2d 391], the court adhered to these rules, adding at page 299 that admittedly a word as used in a particular statute may be ''a relative one ;

but 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.' (*Nash* v. *United States* (1913) 229 U.S. 373, 377 [57 L.Ed. 1232, 1235, 33 S.Ct. 780].)''

In short, the presence of an element of degree in the definition of the words used ''does not of itself render the statutory language insufficiently certain to comply with due process. ' ''Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.'' [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources.' (*American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 218 [9] [28 Cal.Rptr. 700, 379 P.2d 4].)'' (*People* v. *Victor*, 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].) ''The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meaning of words.'' (*People* v. *Vaughn*, 196 Cal.App.2d 622, 632 [16 Cal.Rptr. 711].)

We turn now to a consideration of the words used in the statute. In doing so we are required ''to read the statute in the light of the objective sought to be achieved by it as well as the evil sought to be averted. (*Wotton* v. *Bush* (1953) 41 Cal.2d 460, 467 [261 P.2d 256].)'' (*In re Huddleson*, 229 Cal.App.2d 618, 624 [40 Cal.Rptr. 581].) ''Where the words have a broad and also a restricted meaning, if the apparent object of the statute will be subserved by construing them in their restricted sense, whereas a principal object would be defeated by construing them in their broad sense, the restricted interpretation will be preferred and the broad meaning rejected, though the latter may be the more usual meaning. But a narrow or restricted meaning should not be given a word if it would result in evasion of the evident purpose of the act, or if a broader meaning would prevent evasion and carry out the purpose.'' 45 Cal.Jur.2d, Statutes, § 140, p. 648.)

In 1961 the Legislature, after a lengthy study of the problems involved (see 22 Assembly Interim Committee Reports, No. 1 (1961)) repealed former section 647 of the Penal Code and adopted section 647 in its present form. (Stats. 1961, ch.

560.) Former section 647 classified the crime of "vagrancy" as a misdemeanor.[2]

In repealing former section 647 and enacting the present section, the Legislature recognized, as urged by the principal draftsman of the new section, that the time had come to abandon the vagrancy concept of the former section "for statutes which will harmonize with notions of a decent, fair and just administration of criminal justice and which will at the same time make it possible for police departments to discharge their responsibilities in a straightforward manner . . ." In Professor Sherry's words, this was done "by drafting legislation . . . which will describe the acts to be proscribed with precision and which will be free of the hazy penumbra of medieval ideas of social control characteristic of existing law." (Sherry, *Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision* (Oct. 1960) 48 Cal.L.Rev. 557, 567; and see 22 Assembly Interim Committee Reports No. 1 (1961) pp. 7-19; *People* v. *Bruno*, 211 Cal.App.2d Supp. 855, 859-860 [27 Cal.Rptr. 458].)

"The word 'loiter' has been defined to mean 'To be slow in moving; delay; linger; saunter; lag behind' (Webster's New International Dictionary (2d ed.); see *State* v. *Starr* (1941) 57 Ariz. 270 [113 P.2d 356, 357]) or 'to linger idly by the way, to idle' *Phillips* v. *Municipal Court* (1938) 24 Cal.App. 2d 453, 455 [75 P.2d 548])." (*In re Huddleson*, 229 Cal. App.2d 618, 621-622 [40 Cal.Rptr. 581].) In The Random House Dictionary of the English Language (unabr. ed. 1966) "loiter" is defined as "1. to linger aimlessly or as if aimlessly in or about a place: . . . 2. to move in a slow, idle manner; make purposeless stops in the course of a trip, journey, errand, etc." ▮ "While taken by itself and in its broad meaning the term may carry no criminal implications, nevertheless as employed in a penal statute and considered in such statutory context, it may have a sinister, wrongful or criminal import. [Citations.]" (*In re Huddleson, supra,* p. 622.)

---

[2]Former section 647 declared that, among others, "3. Every person who roams about from place to place without any lawful business; or, 4. Every person known to be a pickpocket, thief, burglar or confidence operator, either by his own confession, or by his having been convicted of any such offenses, and having no visible or lawful means of support, when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly; or, . . . 6. Every person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business; . . . [i]s a vagrant . . ."

Over the years the courts have considered and upheld the constitutionality of various statutes proscribing "loitering" in one context or another. (See e.g., *Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453 [75 P.2d 548]; *Wright* v. *Munro* (1956) 144 Cal.App.2d 843 [301 P.2d 997]; *Garcia* v. *Munro* (1958) 161 Cal.App.2d 425 [326 P.2d 894]; see also *Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736 [13 Cal.Rptr. 201, 361 P.2d 921].) In 1961 the court in *In re Cregler*, 56 Cal.2d 308 [14 Cal.Rptr. 289, 363 P.2d 305], upheld the constitutionality of subdivision 4 of former section 647 of the Penal Code. It was there held that the word "loiter" as used in the subject statute and in many other police power regulations "has a sinister or wrongful as well as a reasonable definite implication. As proscribed by the statute the word 'loiter' obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." (Pp. 311-312.) In *In re Huddleson*, 229 Cal.App.2d 618 [40 Cal.Rptr. 581], the court followed *Cregler* in sustaining the constitutionality of section 647a, subdivision (2), which provides that "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant . . ."

We are satisfied that with the passing of the "unalloyed, uncomplicated criminal character the sturdy rogue, the idle vagabond, the true vagrant," (tenBroek, *Family Law, Part III*, 17 Stan.L.Rev. 614, 673-674), we are no longer required to give the word "loiter" a restricted meaning in order to sustain the constitutionality of the statute. As tenBroek points out, when section 647 was repealed, recast and reenacted in 1961, "The name of the offense was changed from vagrancy to disorderly conduct. . . . Mere roaming about from place to place by persons without visible means of support is no longer forbidden; one must also refuse to identify himself and to account for his presence when requested by a peace officer to do so, 'if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.' " (P. 673.)

What we have just said about the word "loiter" applies equally to the word "wander." In its broad sense "wander" means: "1. to ramble without a definite purpose or objective; roam, rove, or stray: . . . 2. to go aimlessly, indirectly, or casually." (The Random House Dictionary of the English Language (unabr. ed. 1966).)

As now written, section 647, subdivision (e), does

not make loitering and wandering upon the streets or from place to place without apparent reason or business without more a punishable offense. As there used the words do not connote unlawful activity. (*City of Seattle* v. *Drew,* 70 Wn.2d —— [423 P.2d 522, 524].) They do no more than describe the person who may be asked by a peace officer to identify himself and to account for his presence in the prescribed circumstances. As so used the words "loiter" and "wander" are not so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application. (*Lanzetta* v. *New Jersey,* 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct 618]; *United States* v. *Harriss,* 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808].)[3]

Defendant also contends that the statute is unconstitutionally vague in that it gives the loiterer or wanderer no guidance as to what he must do "to identify himself or to account for his presence." We do not agree.

Here, again, we may look to the commonly accepted meaning of the words. According to the American College Dictionary, "identify" means to "establish as being a particular person or thing; attest or prove to be as purported or asserted." "Identification," according to College Law Dictionary means "Proof that a person or thing is the person or thing [he or] it is supposed or represented to be."

*State* v. *Evjue,* 253 Wis. 146 [33 N.W.2d 305], involved a statute which prohibited the publication of "the identity of a female who may have been raped or subjected to any similar criminal assault . . ." (P. 308 [33 N.W.2d].) In holding that the word "identity" as there used was not unconstitutionally vague or indefinite the court said (p. 309 [33 N.W.2d]) : "The word 'identity' is not a word of art in the law. 'Identity' is a noun and from it the adjective 'identical' is derived. Things are said to be identical when they are the same, equivalent, equal. To identify is to establish the identity of; to prove the same with something described, claimed, or asserted. Identity is defined as sameness of essential or generic character in different examples or instances; the limit approached by increasing similarity; sameness in all that constitutes the objective reality of a thing. (Webster) With respect to persons the most common means of identifying

---

[3] We do not agree with the court in *People* v. *Bruno,* 211 Cal.App.2d Supp. 855, 860-861 [27 Cal.Rptr. 458], that "wandering" as used in section 647, subdivision (e) "consists of movement for evil purposes," even in the absence of any constitutional question.

them is by name, but that is by no means the only method which is employed. Any knowledge or information which enables the recipient to distinguish the person referred to affords a means of identification."[4]

To "account for" is defined in Webster's Third New International Dictionary as meaning: ". . . to furnish substantial reasons or a convincing explanation; make clear or reveal basic causes." In the context of section 647, subdivision (e), as we read it, to account for one's presence is, in substance, an integral part of the identification there required.[5]

While there appear to be no cases directly in point, we are satisfied that for the reasons discussed above, the phrase "to account for his presence" as used in section 647, subdivision (e), is to be given its lay meaning, and that so construed it is not constitutionally vague and indefinite. (See *Dominguez* v. *City & County of Denver,* 147 Colo. 233 [363 P.2d 661], and Notes, *Validity Of "Satisfactory Account" Clauses In Vagrancy Ordinances* (Klahr), 4 Ariz.L.Rev. 284.) We do not think that *United States* v. *Margeson,* 259 F.Supp. 256, is persuasive authority to the contrary.

More fundamentally, defendant contends that the statute is unconstitutionally vague because the crime for which he may be prosecuted is dependent on the subjective discretion of the peace officer who seeks to interrogate him. In support of this contention he relies primarily on the concurring opinion of Justice Black in *Cox* v. *Louisiana,* 379 U.S. 559, 575 [13 L.Ed.2d 487, 498, 85 S.Ct. 476], where he said that a statute is unconstitutional which "does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat." (379 U.S. at p. 579, 13 L.Ed.2d at p. 501; see also *Shuttlesworth* v. *Birmingham,* 382 U.S. 87, 90 [15 L.Ed.2d 176, 179, 86 S.Ct. 211].)

We do not believe that section 647, subdivision (e), can be so construed. In *Cox* v. *Louisiana,* 379 U.S. 536 [13 L.Ed.2d 471, 85 S.Ct. 453], the court held that the statute under which

---

[4]In *People* v. *Diaz,* 174 Cal.App.2d 799, 803 [345 P.2d 370], it was held that, in the circumstances of a case in which the disclosure of the identity of an informer was necessary to a fair trial, mere disclosure of his name without further identifying information was not enough.

[5]It seems clear to us that, as used in section 647, subdivision (e), the concluding phrase, "such identification" as the public safety demands refers back to the obligation imposed on the person of whom the request is made "to identify himself and to account for his presence."

defendant had been convicted, prohibiting obstruction of public streets and passages, was unconstitutional because it vested "unfettered discretion in local officials in the regulation of the use of the streets for peaceful parades and meetings." The court said, however: "It is, of course, undisputed that appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of use of the streets for public assemblies may be vested in administrative officials, provided that such limited discretion is 'exercised with "uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination" . . . [and with] a "systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways. . . ."' *Cox* v. *New Hampshire, supra,* 312 U.S. at p. 576, 85 L.Ed. at p. 105, 133 A.L.R. 1396." (379 U.S. at p. 558, 13 L.Ed.2d at p. 486.)

Section 647, subdivision (e), permits a peace officer to stop one who loiters or wanders upon the streets "without apparent reason or business," and require him to "identify himself and to account for his presence" only "if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." In determining the constitutionality of this enactment we are required to read it in its entirety. So read, we are satisfied that it constitutionally vests appropriate, limited discretion in the peace officers of this state.

Admittedly, the provision in the original draft of the section requiring the loiterer to identify himself and account for his presence was conceived by the principal draftsman to be consistent with the authority which peace officers have long possessed in California. As Professor Sherry says in footnote 72 to his article in 48 California Law Review at page 571: "A dictum in the earliest case in which the private person's responsibility to respond to reasonable police inquiry is discussed is in point with respect to the suspicious loiterer: 'A police officer has a right to make inquiry in a proper manner of anyone upon the public streets at a late hour as to his identity and the occasion of his presence, if the surroundings are such as to indicate to a reasonable man that the public safety demands such identification.' *Gisske* v. *Sanders* (1908) 9 Cal.App. 13, 16 [98 P. 43, 45]. Years later, the California Supreme Court adopted this conclusion in *People* v. *Simon* (1955) 45 Cal.2d 645 [290 P.2d 531]." Although it was held

in *People* v. *Simon* (p. 650) that the search there involved was not reasonable in the circumstances of that case, the court was careful to point out that "There is, of course, nothing unreasonable in an officer's questioning persons outdoors at night [citations], and it is possible that in some circumstances even a refusal to answer would, in the light of other evidence, justify an arrest. (See *Gisske* v. *Sanders, supra,* 9 Cal.App. 13, 17.)" The phrase, ". . . if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification," was included in section 647, subdivision (e), as enacted in 1961 in order to make the section "fit more nearly the dictum from *Gisske* v. *Sanders,* upon which it is based." (22 Assembly Interim Committee Reports, No. 1, p. 18 (1961).)

In our opinion section 647, subdivision (e), confers on the peace officers of the state an appropriate limited discretion which does no violence to any constitutional provision. This discretion is analogous to the discretion vested in such officers to stop pedestrians or motorists on the streets for questioning under circumstances short of probable cause to make an arrest.

*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], was decided in 1963. In that case the court said (at pp. 450-451) : "[W]e have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." At page 452, the court said : "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." This rule was reiterated in *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].

In *People* v. *Cowman,* 223 Cal.App.2d 109 [35 Cal.Rptr. 528], we held that it is constitutionally permissible for a

peace officer to stop an automobile for the purpose of interrogating the occupants even when the officer had no preconceived intent either to arrest the occupants or to conduct a search of the vehicle. We there said (p. 117) that the rationale of the decisions is ''that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens.''

The same conclusion was reached in *People* v. *Perez,* 243 Cal.App.2d 528 [52 Cal.Rptr. 514], where the court said at page 531: ''An officer may stop a pedestrian or motorist for questioning under circumstances short of probable cause for arrest. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) There must, however, be some suspicious circumstance to justify even such a limited interference with an individual's freedom of movement. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706]; *Hood* v. *Superior Court,* 220 Cal.App.2d 242 [33 Cal. Rptr. 782].) There is no precise formula by which it can be determined whether an officer acted lawfully in stopping a pedestrian or a motorist for questioning; the test is '. . . when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary in the proper discharge of his duties.' (*People* v. *One 1960 Cadillac Coupe, supra,* pp. 95-96; *People* v. *Davis,* 222 Cal.App.2d 75, 78 [34 Cal.Rptr. 796]; *People* v. *Porter,* 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886].) The reasonableness of an officer's action depends upon the facts and circumstances of the particular case. (*People* v. *Alcala,* 204 Cal.App. 2d 15, 20 [22 Cal.Rptr. 31]; cf. *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Schader,* 62 Cal.2d 716, 726 [44 Cal.Rptr. 193, 401 P.2d 665].) A mere hunch, without more, that a person may be involved in criminal activity is, of course, insufficient. (*People* v. *One 1960 Cadillac Coupe, supra.*)''

We are concerned here only with the constitutionality of the statute. We are not concerned with the reasonable-

ness of the officer's action in arresting the defendant. Whether his action was reasonable necessarily depends upon the facts and circumstances of the case as developed at the time of trial. (*People* v. *Perez,* 243 Cal.App.2d 528 [52 Cal.Rptr. 514]; *People* v. *Bird,* 248 Cal.App.2d 307, 309 [56 Cal. Rptr. 501].)

The conclusion we have reached is in accord with the Commentary of the Reporters on section 2.02, subdivisions (2) and (3), of A Model Code of Pre-Arraignment Procedure, Tentative Draft No. 1, submitted to The American Law Institute in 1966.[6] Section 2.02, subdivision (1) of that tentative draft provides for the stopping of persons who may have knowledge which may be of material aid to the investigation of some crime. Subdivisions (2) and (3) read: '' (2) *Stopping of Persons in Suspicious Circumstances.* A law enforcement officer lawfully present in any place may, if a person is observed in circumstances which suggest that he has committed or is about to commit a felony or misdemeanor, and such action is reasonably necessary to enable the officer to determine the lawfulness of that person's conduct, order that person to remain in or near such place in the officer's presence for a period of not more than twenty minutes. (3) *Action to Be Taken During Period of Stop.* A law enforcement officer may require a person to remain in his presence pursuant to subsection (1) or (2) of this section only insofar as such action is reasonably necessary to (a) obtain the identification of such person; (b) verify by readily available information an identification of such person; (c) request cooperation pursuant to and subject to the limitations of Section 2.01; or (d) verify by readily available information any account of his presence or conduct or other information given by such person.''

In their commentary on section 2.02 of the tentative draft the reporters say in part (p. 93): ''Some authority to interfere with liberty on less than reasonable cause has been explicitly recognized even in the absence of statute by the courts in a number of jurisdictions, including one Federal Court of Appeals.''[7] As to the constitutionality of the proposal the

---

[6] After extended discussion at the Annual Meeting, section 2.02 of the tentative draft was recommitted to the Reporters for reconsideration with instructions that included approval of the principle of ''stop and frisk.'' (34 U.S. L. Week 2641-2644, May 24, 1966.)

[7] The reporters' footnote to this statement reads: ''5. *United States v. Vita,* 294 F.2d 524, 529-30 (2d Cir. 1961), *cert. denied,* 369 U.S. 823 [7 L.Ed.2d 788, 82 S.Ct. 837] (1962) ('The rule [of Federal R. Crim.

reporters say (p. 94) : "There appear to be no compelling constitutional objections to an authority to stop persons briefly for purpose of criminal investigation. In the single case that squarely raised before the Supreme Court the issue of the constitutionality of such an exercise of power, *Rios* v. *United States* (1960) 364 U.S. 253 [4 L.Ed.2d 1688, 80 S.Ct. 1431], the court declined to decide the question. Where such a power has been explicitly granted by statute, it has been consistently upheld.[8] And even in the absence of statute most courts which have confronted the issue have recognized the constitutional validity of such a power."[9]

### Claim of Privilege Against Self-Incrimination

Defendant's final contention is that section 647, subdivision (e), is unconstitutional because it violates the right of an individual not to be compelled to be a witness against himself, because it invades the right of privacy, and violates due process of law. We are of the opinion that these contentions cannot be sustained.

"The privilege against self-incrimination applies to evidence of 'communications or testimony' of the accused, but not to 'real or physical evidence' derived from him." (*People* v. *Ellis,* 65 Cal.2d 529, 533 [55 Cal.Rptr. 385, 421 P.2d 393], and authorities there cited.) In *Ellis* it was held that "The results of voice identification tests fall within the cate-

Proc. 5(a)] does not apply to a case in which federal officers detain a suspect for a short and reasonable period in order to question him.') ; *United States* v. *Bonanno,* 180 F.Supp. 71 (S.D.N.Y.), *rev'd on other grounds sub nom. United States* v. *Bufalino,* 285 F.2d 408 (2d Cir. 1960) ; *Goss* v. *State,* 390 P.2d 220, 224 (Alaska), *cert. denied,* 379 U.S. 859 [13 L.Ed.2d 62, 85 S.Ct. 118] (1964) ('when the officer stopped the car he was doing nothing more than conducting an investigation in response to circumstances that aroused his suspicion') ; *People* v. *Mickelson,* 59 Cal.2d 448, 30 Cal.Rptr. 18, 380 P.2d 658 (1963) ; *People* v. *Faginkrantz,* 21 Ill.2d 75, 171 N.E.2d 5 (1960) ; *People* v. *Henneman,* 367 Ill. 151, 10 N.E.2d 649 (1937) ; *State* v. *Freeland,* 255 Iowa 1334, 125 N.W.2d 825 (1964) ; *People* v. *Rivera,* 14 N.Y.2d 441, 201 N.E.2d 32 (1964), *cert. denied,* 379 U.S. 978 [13 L.Ed.2d 568, 85 S.Ct. 679] (1965) ; *State* v. *Zupan,* 155 Wash. 80, 283 Pac. 671 (1929) ; *State* v. *Hatfield,* 112 W.Va. 424, 164 S.E. 518 (1932).''

[8]The reporters' footnote here reads: "9. See *Commonwealth* v. *Lehan,* [347 Mass. 197] 196 N.E.2d 840 (Mass. 1964), and authorities cited in note 1 *supra.*" The authorities there cited are *Cannon* v. *State,* 53 Del. 284, 168 A.2d 108 (1961) ; *De Salvatore* v. *State,* 52 Del. 550, 163 A.2d 244 (1960) ; *Kavanagh* v. *Stenhouse,* 93 R.I. 252, 174 A.2d 560 (1961), *appeal dismissed,* 368 U.S. 516 [71 L.Ed.2d 521, 82 S.Ct. 529] (1962). See generally Warner, *The Uniform Arrest Act,* 28 Va. L. Rev. 315, 320-321 (1942).

[9]The reporters here refer to the "authorities cited in note 5 *supra,*" quoted in our footnote 7, *supra.*

gory of real or physical evidence.'' In *People* v. *Sudduth*, 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], the court held that a suspect has no constitutional right to refuse a test for intoxication ''designed to produce physical evidence in the form of a breath sample.'' In *Schmerber* v. *California*, 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], cited in support of the rule as stated in *Ellis* and *Sudduth*, the court held that (p. 914) ''the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.'' The court there noted (p. 916) that ''both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it.''

Section 647, subdivision (e), provides that a person who, in the circumstances there stated, refuses to identify himself and to account for his presence, is guilty of disorderly conduct. Defendant argues that the essential element of the crime here defined is his silence when requested by the peace officer to speak, and that his right to remain silent is protected by the Fifth Amendment. To put it otherwise, his contention is that the obligation to speak imposed on him by the section results in compulsory self-incrimination, in that he is thereby compelled ''to provide the State with evidence of a testimonial or communicative nature'' (*Schmerber* v. *California*, 384 U.S. 757 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826]), which may be used against him at his trial for disorderly conduct.[10] This argument is not tenable.

As we read the authorities, section 647, subdivision (e), cannot be construed as requiring the person interrogated by

---

[10]In Respondent's Reply to Supplemental Briefs of Amici Curiae counsel say: ''The question under 647(e) is not whether, if the defendant is charged with the commission of *another* crime, his refusal to answer may be used against him, or an incriminating statement he made either with or without a *Miranda-Escobedo* warning is admissible in evidence. *The* 'crime' under 647(e) is his not having answered. *If* he had answered there would, presumably, be no charge under the section.

the peace officer to be a witness against himself. While it is true that he may be found guilty of disorderly conduct if he remains silent, ''the silence here is mere nonassertive conduct; it is not a declaration but a failure to offer an explanation, under circumstances which call for one.'' (*People* v. *Wilson*, 238 Cal.App.2d 447, 456 [48 Cal.Rptr. 55], pet. for hearing in Supreme Court denied.) It was held in *Wilson* that evidence of defendant's silence was admissible in his later prosecution for burglary.

In affirming the conviction in *Wilson* the court, at page 458, took note of the rule, as stated in *People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531], that ''There is, of course, nothing unreasonable in an officer's questioning persons outdoors at night [citations], and it is possible that in some circumstances even a refusal to answer would, in the light of other evidence, justify an arrest. [Citations.]'' Then, after quoting section 647, subdivision (e), as enacted in 1961, the court said: ''If there is such a right to interrogate, the results of such interrogation should be available where they reflect conduct on the part of the defendant which tends to establish his guilt unless there is a supervening policy of the law which prevents the use of the conduct or statements of the accused.'' The court found that there was no such supervening policy. In reaching this conclusion the court said in part (p. 459): ''Circumstances may be imagined where answering the type of question here involved would violate the provision against self-incrimination which has been extended to nontestimonial compulsion. (See *People* v. *Dorado, supra*, 62 Cal.2d at p. 352 [42 Cal.Rptr. 169, 398 P.2d 361], applying *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; and *People* v. *Stewart, supra*, 236 Cal.App.2d 27, 30 [45 Cal. Rptr. 712].) *Dorado*, however, recognizes: 'Nothing that we have said, of course, should be interpreted to restrict law enforcement officers during the investigatory stage from securing information from one who is later accused of the crime or from obtaining answers to their questions.' (62 Cal.2d at p. 354.) So here appears a second distinction between the facts of this case and those of *Dorado, Stewart* and *De Leon* [236

---

Accordingly, even assuming *arguendo* that the *Miranda-Escobedo* warning need not be given and assuming that silence or a statement could be used against the defendant were he prosecuted for a *different* crime—the one, presumably, for which the stopping and questioning was done—that still is no basis for it being a crime not to have answered. If a statement is voluntarily made, that is one thing. But when a statement is *not* made, that is quite another.''

Cal.App.2d 530 (46 Cal.Rptr. 241)]. The circumstances here reflect that at the time the preliminary questions were asked the officers did not know what crime, if any, had been committed. The questions were not designed to elicit incriminating statements, but to afford the defendant an opportunity to explain his presence and actions.''

 It is also suggested that when a person is interrogated by a peace officer under the circumstances delineated in section 647, subdivision (e), the peace officer is required to advise him of his right to remain silent in accordance with the rules stated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. This suggestion ignores the explicit holding of *Miranda* (16 L.Ed.2d 725-726) that the principles there announced ''deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. . . . Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo* v. *Illinois,* 378 U.S. 478, 492 [12 L.Ed.2d 977, 986, 84 S.Ct. 1758]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.''

There is no need to extend this opinion with a discussion of the myriad cases in which the rules stated in *Escobedo, Dorado* and *Miranda* have been discussed, distinguished and applied.[11] It is enough to note that we have found none which hold that a person stopped for interrogation by a peace officer in the circumstances set forth in section 647, subdivision (e), where there is no probable cause for arrest and there is no arrest, is in ''custody or otherwise deprived of his freedom of action in any significant way.'' (See Graham, *What is ''Custodial Interrogation?''* 14 U.C.L.A. L. Rev. 59, 78-92; *People*

---

[11] The decision in one of these cases, *People* v. *Cotter,* 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862], was vacated April 20, 1967. See Minutes, p. 3, in 66 A.C., No. 7.

v. *Arnold,* 66 Cal.2d 438, 448 [6] [58 Cal.Rptr. 115, 426 P.2d 515].)

If we are correct in our conclusion that the silence of a person who is stopped for interrogation as provided in section 647, subdivision (e), is "nonassertive conduct" which does not fall within the ambit of the Fifth Amendment, it follows that the interrogation there provided does not constitute an unconstitutional invasion of his privacy. (Cf. *People* v. *Ellis,* 65 Cal.2d 529, 535 [55 Cal.Rptr. 385, 421 P.2d 393].)

In short, we have found no authority to sustain the contentions that one who loiters or wanders upon the streets or from place to place without apparent reason or business has a constitutional right to remain silent when the surrounding circumstances are such as to indicate to a peace officer as a reasonable man that the public safety demands that he identify himself. As the court said in *People* v. *Machel,* 234 Cal.App.2d 37, 43 [44 Cal.Rptr. 126], the "California rule permitting temporary detention for questioning 'strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified.' (*People* v. *Mickelson, supra,* 59 Cal. 2d at p. 452.) While it is operative under circumstances short of probable cause to make an arrest (*People* v. *Michelson, supra*) 'nevertheless there must exist *some* suspicious or unusual circumstance to authorize even this limited invasion of a citizen's privacy.' (*Hood* v. *Superior Court* (1963) 220 Cal. App.2d 242, 245 [33 Cal.Rptr. 782] ; *People* v. *Cowman* (1963) 223 Cal.App.2d 109, 116 [35 Cal.Rptr. 528].)'' Section 647, subdivision (e), is no more than a codification of that rule. (*People* v. *Wilson,* 238 Cal.App.2d 447, 458 [48 Cal.Rptr. 55].)

In our opinion section 647, subdivision (e), of the Penal Code as enacted in 1961 is constitutional.

The order dismissing the complaint is reversed.

FLEMING, J.—I concur.

The Los Angeles County Bar Association has as its motto a saying of Theodore Roosevelt that "Every man owes some of his time to the upbuilding of the profession to which he belongs." I think a comparable duty rests on the citizen at large of whom it can be said, "Every citizen owes some

of his time to the tranquility of the society to which he belongs.'' The legal duty of the citizen to assist public authority in preserving the peace has been firmly established for hundreds of years and is manifest in such obligations as the duty to assist the posse comitatus, to join the hue and cry, to expose treason, and to disclose the commission of known felonies to proper authority.[1] (Gov. Code, §§ 26600, 26602, 26604; Pen. Code, §§ 38, 150, 839; 18 U.S.C., §§ 4, 2382.)

I think it well within the scope of this duty to require a citizen to identify and account for his presence to public authority when he is abroad at 2:30 in the morning under circumstances where the public safety demands such identification. In so doing the citizen makes a positive contribution to the tranquility of the neighborhood by releasing a peace officer for the performance of his duties elsewhere.

This duty to identify and account I find substantially similar to the duty of a motorist on the highway to identify himself and establish his right to be on the highway, to demonstrate his condition to exercise that right safely, and to report accidents involving property damage, personal injury, or death. (Veh. Code, §§ 2804, 12951, 20002, 20003, 20004, 40302, subd. (a).) It is comparable to the duty to identify and account which we fulfill at the demand of the building superintendent when we enter our offices late at night, which we satisfy at the demand of customs and immigration inspectors when we return from overseas, which we carry out at the demand of the Director of Internal Revenue when we file our income tax returns. These inquisitions, oral and written, sometimes inconvenient, sometimes vexing, are part of the price we pay to insure domestic tranquility and promote the general welfare.

---

[1] ''Ever since the days of hue and cry, it has been the duty of a man, who knows that a felony has been committed, to report it to the proper authority so that steps can be taken to apprehend the felon and bring him to justice. In the thirteenth century it was his duty 'to raise hue and cry,' that is to say, he had to report to the sheriff of the county or his officer or to the constable of the town: whereupon it was the duty of that officer to levy hue and cry, that is, to shout aloud calling on all able-bodied men over the age of 15 to pursue the offender and arrest him: and it was their duty to join in the pursuit.'' (Lord Denning, J., *Sykes* v. *Director of Public Prosecutions*, [1962] A.C. 528, 555.)

''Sir Francis Bacon, in the Countess of Shrewsbury's Trial, 2 How. St.Tr. 769, 778 (1612): 'You must know that all subjects, without distinction of degrees, owe to the king tribute and service, not only of their deed and hand, but of their knowledge and discovery. If there be anything that imports the king's service, they ought themselves undemanded to impart it; much more, if they be called and examined, whether it be of their own fact or of another's they ought to make direct answer.' '' (8 Wigmore on Evidence (3d ed.) § 2190, pp. 66-67.)

The theory that one owes no duties to one's neighbors and is under no obligation to render even small assistance to the public order by identifying and accounting for oneself and thus releasing a peace officer for other work, derives from the exaggerated and extreme individualism of another era, an individualism reflected in the statement of a Vanderbilt, "The public be damned," and similarly reflected in the strictures of a Proudhon against all government.[2] The theory is essentially anarchistic and hostile to all law, and it implies that the relationship of the citizen to public authority is comparable to that of the inhabitants of a conquered province to an army of occupation, who recognize no legal obligations owed to their temporary masters and whose relationship with them is based entirely on force. But in a society based on law the pure theory of individualism must defer to a reasonable accommodation between private privilege and public interest. When the public safety reasonably demands identification at 2:30 in the morning, the citizen has no constitutional right to remain anonymous.

With respect to that provision of the Fifth Amendment which states that no person shall be compelled in any criminal case to be a witness against himself, its definition of a criminal case has never been extended to include general investigation. (*People* v. *Perez*, 65 Cal.2d 709, 716-717 [56 Cal. Rptr. 312, 423 P.2d 240].) The position of a person under general investigation is comparable to that of a witness before any judicial, legislative, or administrative officer. If the witness feels that answers to questions put to him will tend to incriminate him he may claim the privilege against self-incrimination. If the privilege has been well claimed, he is entitled to remain silent. (*United States* v. *Burr*, 25 F.Cas.No. 14,692(e), (Marshall, C.J.).) But until the privilege has been validly claimed, his civic duty to identify and account continues in force. (*Sullivan* v. *United States*, 274 U.S. 259, 263-264 [71 L.Ed. 1037, 1039, 1040, 47 S.Ct. 607, 51 A.L.R. 1020]

---

[2] "To be governed is to be watched, inspected, spied on, regulated, indoctrinated, preached at, controlled, ruled, censored, by persons who have neither wisdom nor virtue. It is every action and transaction to be registered, stamped, taxed, patented, licensed, assessed, measured, reprimanded, corrected, frustrated. Under pretext of the public good it is to be exploited, monopolized, embezzled, robbed and then, at the least protest or word of complaint, to be fined, harassed, vilified, beaten up, bludgeoned, disarmed, judged, condemned, imprisoned, shot, garroted, deported, sold, betrayed, swindled, deceived, outraged, dishonored. That's government, that's its justice, that's its morality!" (Pierre Proudhon, quoted in Tuckman, The Proud Tower, p. 65.)

(Holmes, J.) ; *Communist Party* v. *Control Board,* 367 U.S. 1, 105-110 [6 L.Ed.2d 625, 694, 697, 81 S.Ct. 1357] (Frankfurter, J.).)

I conclude that Penal Code, section 647, subdivision (e), draws on civic duty without unduly infringing individual right, and is therefore constitutional.

HERNDON, Acting P. J.—I dissent.

Despite my very strong desire to support and sanction any and all constitutional provisions of law reasonably designed to strengthen and increase the effectiveness of our law enforcement officers in the performance of their exceedingly difficult work of detecting and preventing crime in this age of increasing lawlessness, I feel obliged to dissent and this for two major reasons.

First I am persuaded that the judges of the trial court and of the appellate department were correct in their holdings that the law here in question is unconstitutional. In the circumstances of this case I deem it unnecessary to repeat or set forth herein the reasoning of the decision of the appellate department. Suffice it here to say that in the light of established principles of constitutional law, I believe that this statute will be held incompatible with the dictates of the Fourth and Fifth Amendments to the federal Constitution.

Secondly, I apprehend that even if this law were not vulnerable to attack on constitutional grounds, its operation in the context of the entire complex of constitutional principles which have been enunciated by the Supreme Court of the United States in recent times would entail results more harmful than beneficial to the aims of effective law enforcement.

For example, it would appear that statements given by an apparent ''loiterer'' in response even to ''normal investigatory questioning''[1] might be deemed to have been given under penal compulsion and therefore inadmissible in a subsequent prosecution of the ''loiterer'' for the murder or the robbery which the officers were seeking to solve when they propounded their proper investigatory questions.[2]

I am unable to agree with the view of my colleagues that section 647, subdivision (e), ''is no more than a codification of [the] rule'' sanctioning the propriety of police action in

---

[1]Cf. *People* v. *Perez,* 65 Cal.2d 709, 716 [56 Cal.Rptr. 312, 423 P.2d 240].

[2]Cf. *Garrity* v. *New Jersey,* 385 U.S. 493 [17 L.Ed.2d 562, 87 S.Ct. 616]; and *Spevack* v. *Klein,* 385 U.S. 511 [17 L.Ed.2d 574, 87 S.Ct. 625].

temporarily detaining citizens and questioning them in circumstantial situations in which such police action appears reasonable. (Cf. *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 648]; *Hood* v. *Superior Court,* 220 Cal.App.2d 242 [33 Cal.Rptr. 782]; *People* v *Cowman,* 223 Cal.App.2d 109 [35 Cal.Rptr. 528]; *People* v. *Bird,* 248 Cal. App.2d 307 [56 Cal.Rptr. 501].) As author of the opinions in *Hood, Cowman* and *Bird,* I am obviously in complete accord with the law therein enunciated. If section 647, subdivision (e), were no more than a codification of presently accepted decisional law, there would be no compelling need for the enactment of this statute. As I have indicated, I fear that the effect of section 647, subdivision (e), would not be to augment or strengthen but rather to jeopardize the effectiveness of the present rule which sanctions investigatory questioning.

Respondent's petition for a hearing by the Supreme Court was denied July 26, 1967.

