GRANT V. KAVANAGH *vs.* ROBERT B. STENHOUSE.

OCTOBER 31, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J.   This is an action of trespass for false arrest. The case was tried before a superior court justice sitting with a jury and resulted in a verdict for the defendant.   It is before us on the plaintiff's bill of exceptions to the denial of his motion for a directed verdict, to the denial of several requests for instructions to the jury and to certain portions of the charge.

The record establishes that on January 20, 1960 plaintiff and Donald Wheeler, a fellow worker, were involved in a highway accident in the town of Westerly.   When James A. Keane of the Westerly police department arrived at the scene, plaintiff was standing outside Wheeler's car at the door on the operator's side and Wheeler was seated behind the wheel.   The defendant, a lieutenant in the Westerly police department and apparently the superior officer in charge, arrived shortly thereafter and was advised by Officer Keane that he had Wheeler and plaintiff in custody. It is uncontradicted that Officer Keane advised defendant that both men had been drinking and that, although each had identified Wheeler as the operator, he, Officer Keane, was not sure which of the men was operating the car when it struck and knocked down two telephone poles.   Asked why he was not sure, Keane replied, "We've had trouble in the past on cases like this."

It further appears that when the investigation had been completed defendant directed Officer Keane to take both men to a doctor for examination preparatory to a possible charge of operating under the influence of liquor.

The substance of defendant's testimony, more or less corroborated by Keane and a fellow officer, is that the detention of plaintiff was part and parcel of the investigation of the accident.

It is undisputed that pursuant to defendant's orders Officer Keane drove plaintiff and Wheeler to the police station, where the latter was subsequently charged as the operator and plaintiff was exonerated. Officer Keane testified that he returned to the scene of the accident to continue the investigation but was unable to find any eyewitnesses, which left him with Wheeler's admission that he had been the operator of the car. The defendant corroborated Officer Keane in this regard and added that Keane and Nicholas T. Terranova were in charge of the investigation.

The latter testified that he was on duty at the station when an unidentified person telephoned to report the accident, and he dispatched Officer Keane to the scene. He further testified that when plaintiff was brought to the station he appeared to have been drinking, was uncooperative, and refused to produce identification until asked to do so a third time. The record also discloses that both plaintiff and Wheeler were locked up in separate cells and that plaintiff remonstrated against his detention. The testimony is in conflict as to the nature and extent of his remonstrance, but it is uncontradicted that within two hours plaintiff was charged with reveling. See *State* v. *Kavanaugh,* 93 R. I. 239.

The defendant pleaded justification, relying on G. L. 1956, §12-7-1, which reads as follows:

"Temporary detention of suspects.—A peace officer may detain any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going; and any such person who fails to identify himself and explain his actions to the satisfaction of such peace officer may be further detained and further questioned and investigated by any peace officer; provided, in no case shall the total period of such detention exceed two (2) hours, and such detention shall not be recorded as an arrest in any official record. At the end of any

such detention period the person so detained shall be released unless arrested and charged with a crime."

After the parties had rested, plaintiff's motion for a directed verdict was denied and he duly excepted. He filed a series of requests for instructions to the jury and excepted to the denial of six of them as well as to two portions of the charge.

We shall first consider the five requests for instructions which raise two basic issues, namely, that there is no distinction at common law between "detention" and "arrest," and that any attempt by the legislature to create such a distinction would be invalid. He argues that such a distinction would be arbitrary, constituting a deprivation of liberty, due process, right to bail, speedy trial, representation by counsel and habeas corpus, as guaranteed by the constitution. He relies on article I, §§6, 9, 10 and 23, of the Rhode Island constitution, and article XIV, §1, of amendments to the constitution of the United States. In support thereof, he refers our attention to numerous cases in federal and state jurisdictions.

We do not perceive these cases to be in point, however, since we are of the opinion that the basic issue is whether, assuming there is no distinction between "detention" and "arrest" at common law, the legislature in the exercise of its broad police power can provide for such a distinction in reasonable circumstances. If so, it follows that the rights of an accused, or one under arrest, are not in issue here.

If the period of detention is reasonably limited, is unaccompanied by unreasonable or unnecessary restraint, and is based upon circumstances reasonably suggestive of criminal involvement, the legislature may lawfully make a distinction between such mere detention and an arrest.

The plaintiff has in his brief reviewed the common-law strictures to which peace officers were subject in making an arrest and referred to the relaxing of such strictures, citing P. L. 1915, chap. 1261. We deem it appropriate to sug-

gest that by the enactment of that chapter the general assembly exercised its police power in the interest of society as a whole in order that peace officers laboring on its behalf would not be unreasonably hampered in carrying out their duties or in doing so at their peril in the event of a suit for false arrest.

In the enactment of G. L. 1956, §12-7-1, however, the general assembly did relax to a degree the limitations to which the police had been subject; but it seems to us that the general assembly exercised its police power on behalf of the individual member of society by protecting him against the ignominy or humiliation of a premature arrest where the detaining officer may have had reason to suspect that the person detained was guilty of wrongdoing. Although in *State* v. *Kilday*, 90 R. I. 91, 155 A.2d 336, we had occasion to consider the act in question and indicated that the detaining period was not unreasonable, we did not specifically so declare but do so now. Further, we are of the opinion that the words "reason to suspect" establish a just standard for detention as distinguished from arrest.

In *De Salvatore* v. *State of Delaware, Del.*, 163 A.2d 244, that court was called upon to determine the constitutionality of a statute which in all relevant particulars was identical to §12-7-1. The only notable difference between the two statutes is that where in the Rhode Island statute "reason to suspect" is the language employed by the legislature, the Delaware act provides "reasonable ground to suspect." We conceive the distinction to be one without a difference. It appears from the *De Salvatore* case that the appellant, suspected of operating a motor vehicle under the influence of an intoxicating beverage, was advised by police officers that he was being detained pursuant to the provisions of the Delaware act and would either be charged with the offense or released within two hours. The appellant challenged the constitutionality of the act and in passing upon his contention the Delaware court stated at page 248:

"* * * Appellant argues that arrests or detentions without warrant are constitutional only when made on 'probable cause' and not on mere suspicion. He cites numerous Federal authorities in support. We may assume that he is correct in arguing that arrests without warrant may be made only upon probable cause.

"We point out, however, that 11 Del. C. §1902 purports to govern, not arrests for crime which are governed by 11 Del. C. §1906, but detentions of persons in the course of the investigating of crime. Such police practice has long been recognized as valid by the courts when kept within reasonable bounds. Cf. United States v. Bonanno, D. C., 180 F. Supp. 71, and People v. Henneman, 367 Ill. 151, 10 N. E. 2d 649. This court, also, has upheld the investigatory power of the police to detain for questioning. Wilson v. State, 10 Terry 37, 50, 109 A.2d 381, 388.

"We can find nothing in 11 Del. C. §1902 which infringes on the rights of a citizen to be free from detention except, as appellant says, 'for probable cause'. Indeed, we think appellant's attempt to draw a distinction between an admittedly valid detention upon 'reasonable ground to believe' and the requirement of §1902 of 'reasonable ground to suspect' is a semantic quibble. We point out that in Wilson v. State, in referring to the arrest of the defendant, we said, 'Nor can it be doubted that the arrest was legal, that is, upon reasonable suspicion of felony.' [10 Terry 37, 109 A.2d 390.] In this context, the words 'suspect' and 'believe' are equivalents.

"We hold, therefore, that 11 Del. C. §1902 is constitutional. * * *"

That case was decided in June 1960. Later in March 1961, in *Cannon* v. *State of Delaware*, Del., 168 A.2d 108, the court again passed upon the constitutionality of the Delaware detention act. At page 110 thereof the court stated:

"* * * A 'detention' under the statute is not recorded on the police records and hence in practical effect lacks one of the normal characteristics of an arrest. This is

for the protection of the citizen who is detained for questioning."

The court further stated on the same page:

"Defendant asserts finally that if the act authorizes a 'detention' without an 'arrest' (as it clearly does), then it is unconstitutional. The assertion is not supported by argument. Presumably defendant means that a citizen so detained is deprived of his liberty without due process of law. This argument is also without merit. In a recent case we sustained the constitutionality of the act, though the attack was upon grounds somewhat narrower than defendant's apparent contention here. De Salvatore v. State, Del., 163 A.2d 244, 249.

"To set the question at rest we expressly reaffirm our holding in the De Salvatore case. The act is clearly a reasonable exercise of the police power and is in our opinion constitutional. * * * "

In the case at bar plaintiff's remaining exception relating to the refusal of the trial justice to instruct the jury is based on his contention that the subsequent arrest for reveling, even if based on probable cause, did not excuse defendant for the original detention. This argument presupposes the invalidity of the statute in attempting to distinguish between "detention" and "arrest." Having decided that the statute in question is valid, his argument is without merit. Since it is uncontradicted that plaintiff was charged with reveling within two hours of his original detention, and his detention thereafter was a consequence of an event not connected with the apparent misdemeanor for which he was originally detained but was an arrest on a different charge, the detention of which the plaintiff complains in this suit terminated within a two-hour period.

The plaintiff further argues that in the trial justice's instructions to the jury she erred in two particulars: First, in reading the provisions of the statute in question and charging them that such was the law of the state; and secondly, in charging the jury specifically as follows: "If you

find that the defendant, as he set up in his plea, has proven to you that it was a detention under 12-7-1 and not an arrest, then you must find for the defendant."

For the reasons heretofore given the first of these exceptions is without merit. The second, however, raises a separate issue not heretofore considered. The language of the trial justice to which exception was taken standing alone might be open to successful assault, but the charge when read in its entirety demonstrates that the language complained of is but a part of the instructions bearing on defendant's plea of justification. The trial justice charged the jury that under our system the defendant could have remained mute, but having set up an affirmative defense was required to prove the same by a fair preponderance of the evidence.

The defendant's plea alleged in effect that he had "reason to suspect" as provided in §12-7-1. The trial justice stated, speaking of defendant, "He has, therefore, affirmatively placed before you his position with respect to his conduct as a law enforcement officer and he has assumed the burden of proof that he did act in accordance with the statute by a preponderance of all the evidence, whether it came from the plaintiff's witnesses, the plaintiff himself, or the defendant himself." We entertain no doubt that the jury understood that the burden was on the defendant to prove his justification by way of full compliance with the statute on which he relied.

The plaintiff, however, contends that since the pertinent language is " * * * whom he has reason to suspect is committing, has committed or is about to commit a crime * * *" the test could only be subjective, since it represents nothing more than a mere suspicion entertained by the officer. This contention misconceives the purport of "reason to suspect" as it appears in the context. These words are connotative with grounds for belief as distinguished from mere suspicion. It is for the jury to determine from all of the

evidence whether in the circumstances the detaining officer was warranted in concluding that reasonable grounds did exist. His conclusion must find justification in the minds of the jury.

The plaintiff's final exception is to the denial of his motion for a directed verdict. He contends that since detention and arrest are synonymous in law and the uncontradicted evidence is that defendant, relying on an invalid act of the legislature for justification, ordered plaintiff detained, the verdict must be for plaintiff. He has more or less combined this exception with those relating to the instructions as given and those denied in contending that detention must be equated with arrest. We have heretofore considered and disposed of that contention.

He argues further, however, that by art. I, §6, of the Rhode Island constitution, the people have secured themselves against unreasonable seizures, and that by §23 thereof they have reserved to themselves all of the rights previously possessed and not specifically enumerated in the constitution. We are persuaded that the one is dispositive of the other. By constitutionally providing against unreasonable seizures they inferentially recognize the necessity for reasonable regulations in this regard.

We are aware that there is some tendency to minimize or even discount the qualified language of the prohibition against unreasonable seizures, but we are not constrained to hold that the qualification is without significance.

It is urged, however, as we understand it, that notwithstanding this legislative power there are instances, and it is argued that §12-7-1 falls within them, when the legislature is without the right to exercise it. If this means that the legislature should forego the exercise of its police power in deference to that which was previously considered as a right, then it constitutes an attack on public policy as declared by the legislature and is not cognizable in judicial proceedings. We are concerned only with the constitutional

warrant of the legislature to declare policy in any given instance.

There is, however, the question of whether there was evidence, when viewed in a light most favorable to the defendant, from which the jury could find that the defendant acted pursuant to and in accordance with the provisions of the statute on which he relied. It is clear from the record as to the condition of both Wheeler and plaintiff, the latter standing outside the car at the door on the side of the operator, and his uncooperative attitude, that there was evidence which raised a question for the jury whether there was some justification for the officer's uncertainty in the premises.

In passing on the validity of the Delaware act the court held in the *Cannon* case that the statute contemplated the use of whatever force was necessary to effectuate detention. We are in accord with this principle. We also hold that the use of unnecessary or unreasonable force or the unnecessary incarceration of a person merely detained renders such detention an arrest ab initio, much in the same manner as the failure either to charge or release a person detained within the time limit prescribed by the statute. See *State* v. *Kilday, supra.*

In the instant case, however, the trial justice in passing on the motion for a directed verdict was confronted with the testimony of Officer Terranova on the issue of whether it was reasonable or necessary to lock plaintiff in a cell. That officer testified that when the plaintiff was brought to the station he appeared to have been drinking, "because he staggered"; that some individual neither connected with the case nor a member of the police department was present at such time; and that the defendant ordered the plaintiff locked up after the latter refused to furnish identification. On this state of the evidence the trial justice properly submitted the issue to the jury.

All of the plaintiff's exceptions are overruled and the case is remitted to the superior court for entry of judgment on the verdict.

FROST, J., did not participate in the decision.

*Pontarelli & Berberian, Aram K. Berberian,* for plaintiff.

*Capalbo & Lauria, Emanuel J. Lauria,* for defendant.