206 A.2d 531.

ARAM K. BERBERIAN *vs.* JOHN A. SMITH.

JANUARY 28, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This is an action of trespass in two counts, one for assault and battery and the other for false imprisonment. The plaintiff was nonsuited as to the first count and went to trial on the merits of the count for false imprisonment before a justice of the superior court sitting without a jury. At the conclusion of the evidence the trial justice delivered his decision from the bench for the defendant for costs. The plaintiff has brought the case here by his bill of

exceptions, consisting of an exception to an evidentiary ruling and another to the decision.

To the declaration defendant pleaded the general issue and a second amended special plea in justification of his conduct toward plaintiff as alleged in the second count of the declaration. The plaintiff filed a replication in which he joined issue. The second count reads as follows: "The defendant on 20 November, 1958 at approximately 10:00 p.m., in the City of Pawtucket, Rhode Island, vi et armis, imprisoned him and detained him in a prison there without any reasonable or probable cause, whatsoever, for the space of approximately one half hour the next following, contrary to the laws of this State and against the will of the plaintiff."

It appears from the evidence that on November 20, 1958, at about 10:30 p.m., plaintiff drove his automobile over the Pawtucket River bridge, a section of a new freeway recently completed but not then formally open to the public. Sawhorses had been placed at the northern and southern termini of the bridge to prevent access thereto. However, plaintiff was able to enter from the north by passing around the sawhorse at that terminus and to proceed southerly until he reached the sawhorse at the southern end of the bridge. It was necessary for him to move the sawhorse there, which he did.

After he had passed through he got out of his car to replace the sawhorse, and as he was doing so defendant, a police officer, accompanied by another officer drove up in a police car and inquired of plaintiff what he was doing on the bridge. The plaintiff said he had just driven across it. Thereupon, some conversation took place about the reasons for his presence on the bridge which are not important to the resolution of the ultimate issue in the case. The upshot of such conversation was that plaintiff refused to follow certain suggestions of defendant, whereupon defendant

called for the police patrol wagon and indicated that plaintiff was to be taken to the police station. At this juncture plaintiff attempted to drive away, but he was prevented from so doing by defendant placing the police car in front of his car. The plaintiff then locked the doors and rolled up the window of his car which prevented defendant from taking him into the patrol wagon.

While plaintiff was in that situation, surrounded by defendant and the other police officers, Deputy Chief Hourigan happened to pass by and inquired what the commotion was about, whereupon plaintiff got out of his car and told the chief that defendant wanted to take him to the police station in the wagon and that he did not want to go. According to plaintiff the chief replied, "Well, you'd better go, like the rest of them." Deciding that "it was useless" to resist he went in the wagon and was followed to the station by defendant in the police car. After plaintiff had been in the station about forty-five minutes, during which time he talked to the police lieutenant on duty there, he was allowed to leave without any charges being preferred against him.

On such facts, which are undisputed, the issue here is whether defendant was guilty of a false arrest of plaintiff resulting in false imprisonment. After a lengthy review of the evidence the trial justice concluded that plaintiff did not submit to arrest by defendant but to Officers McConaghy and Delphia, who were standing by when Deputy Chief Hourigan told plaintiff he had better go to the police station. The trial justice said that defendant at this time was a mere observer and therefore did not as a matter of law effect the arrest, although he had every intention of doing so, but was prevented by the actions of plaintiff.

In our opinion this conclusion is predicated upon a misconception of false arrest based on what appears to be an overrefinement of the evidence tending to absolve defendant

of the obvious consequences of his own actions from the time he first stopped plaintiff until he attempted to get him into the police wagon. When plaintiff would not voluntarily go defendant's own testimony indicates that it was he who took the necessary measures to prevent him from leaving the scene.

He called for the patrol wagon and when it arrived it was stopped directly behind plaintiff's car. He explained to the officer in charge that, "I wanted him [plaintiff] taken to the station; he just wouldn't get out of the car. * * * They tried to get him out. He wouldn't get out." He admitted that he had called for the wagon for the purpose of taking plaintiff to the police station. He further testified that when plaintiff tried to drive away he chased him and "backed the police car right down in front of him so he couldn't move."

Such testimony was confirmed by the following interrogation of him in cross-examination: "Q. * * * Did you just tell us that he was unable to move his car because you backed your police car? A. After I chased him. Q. That's what I'm referring to. A. That's right. Q. All right. So that it's fair to say, is it not, sir, that after he escaped from you the first time, you were going to block him the second time so he couldn't drive away? A. That's right. Q. And it was your intention at that time to do so, is it not correct? A. That's right. Q. And it is also fair to say that you succeeded in doing so?" Objection to the question overruled. "Q. Do you understand the question? A. Yes. I stopped him so he wasn't going to move."

In our opinion this clearly shows a restraint of plaintiff by defendant constituting an arrest and ultimate submission by plaintiff of his person to the custody of defendant. We must therefore disagree with the finding of the trial justice that the aforementioned circumstances surrounding defendant's detention of plaintiff did not constitute an arrest

within the intendment of G. L. 1956, §12-7-7. Nor can we agree with his conclusion that plaintiff's colloquy with Deputy Chief Hourigan was the effective means of plaintiff's arrest by Officers McConaghy and Delphia in which the chief was a participant. What the chief's response to plaintiff actually amounted to was advice not to resist but to comply with defendant's assertion of authority to take plaintiff to the station in the police wagon.

The next question is whether defendant was justified in originally detaining plaintiff by virtue of §12-7-1, which reads as follows:

> "A peace officer may detain any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going; and any such person who fails to identify himself and explain his actions to the satisfaction of such peace officer may be further detained and further questioned and investigated by any peace officer; provided, in no case shall the total period of such detention exceed two (2) hours, and such detention shall not be recorded as an arrest in any official record. At the end of any such detention period the person so detained shall be released unless arrested and charged with a crime."

The trial justice concluded from the evidence that defendant was warranted in assuming that plaintiff's presence on the bridge in the circumstances was suspicious and that for a variety of possible reasons he might have had reasonable cause to believe a crime had been committed by plaintiff or was about to be committed.

The difficulty with this reasoning is that there is no testimony by defendant which lends support to it. He testified that after he stopped plaintiff and asked him what he was doing on the highway he replied he was getting off; that he then asked plaintiff to go back with him to see if the barricade at the point where plaintiff got on was in place; that

plaintiff refused and questioned his, defendant's, jurisdiction; that defendant then said they would go to the police station to find out one way or the other; and that when plaintiff tried to get away and refused to drive his car to the station he, defendant, called for the police wagon to take plaintiff there. The only reason for arresting plaintiff and taking him to the station was to settle the question of defendant's authority to order plaintiff to return the way he had come upon the bridge and to get off.

There is nothing that we can find in the record to show that it was an offense to be upon the bridge and defendant nowhere in his testimony claimed that he had any reason to suspect that plaintiff had committed an offense or was about to commit one. On the contrary it is clear that he ordered plaintiff taken to the station to ascertain whether he, defendant, had authority to order plaintiff to get off the bridge by returning the way he had come upon it.

On the record as it stands undisputed defendant's action does not, in our opinion, place him within the ambit of §12-7-1, hence his special plea of justification for such action fails. There being no evidence that defendant had relied for his action upon a reasonable ground of suspicion that plaintiff had committed a crime or was about to commit one, the trial justice erred in sustaining the special plea of justification.

In view of our conclusion that the trial justice's decision on the merits is erroneous, we need not consider the plaintiff's exception to the evidentiary ruling.

The plaintiff's exception is sustained, the trial justice's decision is reversed, and the defendant may appear in this court on February 17, 1965 to show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the plaintiff for nominal damages of $1 and costs, there being no proof of other damages in the record.

*Aram K. Berberian,* for plaintiff.

*John A. O'Neill, Harvey J. Ryan,* for defendant.