270 A.2d 921.

STATE *vs.* GEORGE GIRAGOSIAN.

NOVEMBER 9, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The defendant was indicted and subsequently convicted by a jury of entering a dwelling with intent to commit larceny in violation of G. L. 1956 (1969 Reenactment) §11-8-3. The trial justice sentenced him to serve a term of seven years in the Adult Correctional Institutions. The case is before us on certain exceptions taken by the defendant during the course of the trial.

The pertinent factual background follows. On the morning of April 9, 1967, at approximately 6:30 a.m., Mrs. Avis C. Farrell discovered someone, whom she subsequently identified as defendant, ransacking a chest of drawers on the first floor of her home in the city of Pawtucket. As a result of her scream, defendant turned, faced Mrs. Farrell, and then fled. She testified that she stared at defendant for "several seconds" and that she also noticed his clothing, particularly his hat which was a so-called "Alpine hat." Further investigation revealed that a set of house keys and driver's licenses were taken.

On April 11, 1967, a Pawtucket police officer, while on early morning patrol, saw an automobile, which had been involved in a two-car accident. He stopped to investigate and saw defendant sitting behind the steering wheel. He attempted to identify defendant and asked him for his license and registration. The defendant did not show the officer his license; he only produced a registration for the car, showing that it was a Hertz Rent-A-Car. The officer, thereupon, warned defendant of his constitutional rights and told him he would have to detain him. He then

brought him to the police station, where he was held pending further investigation. The desk sergeant testified that defendant's attire "struck a bell" with him. When asked to identify himself and provide identification, defendant gave three different names to the officers at the station. He was then searched and several keys and other objects were taken from him. The keys were later found to match those fitting doors in the Farrell household. At about 8:30 a.m. on the morning of April 11, 1967, Mrs. Farrell was called to the police station, where she identified defendant in a lineup of three persons.

# I

We first consider defendant's contention that the in-court identification of defendant should not have been permitted. The defendant argues that the identification would be invalid if it were the result of a prior illegal lineup. Since the lineup in this case occurred prior to June 12, 1967, defendant concedes that under *Stovall* v. *Denno*,[1] 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the rules laid down in *United States* v. *Wade,* 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert* v. *California,* 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, regarding one's right to counsel at a lineup, do not apply here. He argues, however, that the lineup must be considered "* * * as a circumstance leading up to the totality of circumstances which evolved in her courtroom testimony." So viewed, he argues that, independent of any right to counsel claim, the lineup was "* * * so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall* v. *Denno, supra,* 388 U. S. at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at

---

[1] See *State* v. *Mandarelli,* 105 R. I. 696, 254 A.2d 738; *State* v. *Wright,* 105 R. I. 556, 253 A.2d 593; and *State* v. *Nordstrom,* 104 R. I. 480, 244 A.2d 842, where we followed the rule set forth in *Stovall* v. *Denno, supra.*

1206. We do not agree with defendant's argument on this issue.

As the Court said in *Stovall, id.* at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206, "* * * a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." There is nothing in this record, which in any way indicates that the circumstances surrounding the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. The confrontation at the police station took place only two days after the entry. Mrs. Farrell testified that, at the time she discovered the intruder in her home, she looked at him for a few seconds, that the light that morning was very good, and that she saw the man very clearly. She also described the clothing the intruder was wearing, especially his Alpine hat. In the circumstances we find nothing unfair about the conduct of the three-man lineup.

The defendant next contends that the validity of the in-court identification was vitiated by the fact that Mrs. Farrell was, on at least two occasions, shown pre-trial photographs of defendant. It appears from the record that defendant's photographs were shown to the witness several days before trial. The defendant states that the only photographs shown to the witness were those of defendant and that the only purpose for doing so was to guarantee that the witness would identify defendant as the person whom she had earlier identified. The defendant argues that the showing of these photographs to the witness, in the totality of circumstances, were impermissibly suggestive and violative of due process. He relies on *Simmons v. United States,* 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, which involved pre-trial identification by photograph.

The defendant's argument regarding the showing of the

photographs is without merit. We see nothing wrong, in the circumstances of this case, with the state's showing of defendant's photographs to the witness in preparation for the trial. *Simmons* v. *United States, supra,* on which defendant places great reliance, does not aid defendant in this case. In *Simmons,* which involved no lineup identification, the Court upheld the pre-trial identification by photograph and spoke as follows:

> " * * * we hold that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253.

We believe that the foregoing standard is sound and is applicable here. However, on this record, we cannot say that the identification was so impermissibly suggestive as to violate the requirements of *Simmons, supra.*

For these reasons we hold that the in-court identification in the case at bar was not improper.

## II

We next consider defendant's contention that the search of defendant at the police station was unlawful. He bases this argument on his exception to the trial justice's ruling denying his motion to strike all testimony relating to the keys which had been taken from him at the police station. Relying on G. L. 1956 (1969 Reenactment) §12-7-1, our "Temporary detention of suspects" statute,[2] defendant ar-

---

[2]"A peace officer may detain any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going; and any such person who fails to identify himself and explain his actions to the satisfaction of such peace officer may be further de-

gues that, since he was not charged with the instant offense within the two-hour period set forth in that statute, his detention was illegal *ab initio* and, therefore, the search at the police station was unlawful. To support his argument that defendant's detention at the scene of the accident and the subsequent search was illegal, defendant cites *State v. McWeeney*, 100 R. I. 394, 216 A.2d 357, and *Kavanagh v. Stenhouse*, 93 R. I. 252, 174 A.2d 560.

The weakness in defendant's position is the fact that, at the time of his detention, he was already under legal arrest. At the scene of the accident, defendant did not display a driver's license to the police officer, as requested. This action amounted to a violation of §31-10-27,[3] by his failure to have his operator's license in his immediate possession and by failing to display the same upon the officer's demand. Even if defendant were not a licensed driver, he still violated the law, since the lack of a valid driver's license was a violation of §31-10-1.[4] Under §31-27-13, violation of §31-10-1 or §31-10-27 constitutes a misdemeanor. *McWeeney* and *Stenhouse*, both *supra*, are of

tained and further questioned and investigated by any peace officer; provided, in no case shall the total period of such detention exceed two (2) hours, and such detention shall not be recorded as an arrest in any official record. At the end of any such detention period the person so detained shall be released unless arrested and charged with a crime."

[3]Section 31-10-27 reads:

"License to be carried and exhibited on demand.—Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same upon demand of any peace officer or inspector of the registry and shall, upon request by any proper officer, write his name in the presence of such officer for the purpose of being identified. However, no person charged with violating this section shall be convicted if he produces in court or the office of the arresting officer an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest."

[4]Section 31-10-1, in pertinent part, reads:

"License required to drive.—(a) No person * * * shall drive any motor vehicle * * * unless such person has a valid license * * *."

no help to defendant. Under G. L. 1956 (1969 Reenactment) §12-7-3,[5] the officer had the authority to arrest defendant for committing a misdemeanor in his presence. At the scene, when the police officer informed defendant of his rights and removed him to the police station, a valid arrest was made. See *State* v. *McWeeney, supra*. Compare *Barth* v. *Flad,* 99 R. I. 446, 451, 208 A.2d 533, 536, where the court said:

> "We are constrained to agree with plaintiff's contention that he was arrested by defendant when he stopped his car at defendant's direction. We are unable to agree that defendant, by the mere act of asking plaintiff to produce his operator's license, must be held to have converted that arrest into a detention under the provisions of §12-7-1."

Since there was a valid arrest at the scene of the accident, the subsequent search at the police station was lawful. Indeed, defendant concedes that a police officer has the right to search the person of the accused, once he is placed under arrest. See *State* v. *Carufel,* 106 R. I. 739, 749, 263 A.2d 686, 691. Nor does it make any difference

---

[5]Section 12-7-3 reads:

"Arrest without warrant for misdemeanor.—A peace officer may without a warrant arrest a person for a misdemeanor, whenever:

"(a) The officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it.

"(b) The person to be arrested in fact has committed or is committing a misdemeanor in the presence of the officer, and in such case it shall be immaterial that the officer did not believe him guilty or on unreasonable ground entertained belief in his guilt.

"(c) The officer has reasonable ground to believe that the person to be arrested has committed a misdemeanor and either has fled from the scene of the crime or is a nonresident of this state and cannot be arrested later.

"Provided, an arrest under paragraph (a) or paragraph (b) of this section must be made within twenty-four (24) hours after the commission of the misdemeanor, but an arrest under paragraph (c) may be made at any time."

that the fruits of another crime were obtained as a result of the search or that defendant was ultimately charged with violations, other than the one for which he was originally arrested. See *Johnson* v. *State,* 8 Md. App. 187, 259 A.2d 97, where the defendant was lawfully arrested for a misdemeanor and searched, whereupon evidence was found to convict him for another crime. In affirming the conviction the court said:

> "Appellant's arrest being legal, Detective Spencer was authorized to conduct incident thereto a search of appellant's person for evidence of the crime and for weapons. (cites omitted) When, in the lawful course of that search, Spencer discovered the cache of narcotics in appellant's pocket, he was entitled to seize them, it being well settled that if the circumstances make an arrest lawful for one crime, there may be a reasonable seizure of items in the possession of the arrestee, and a consequent right to use the items so seized as evidence to convict for a crime different from that which justified the arrest." *Id.* at 192-93, 259 A.2d at 100.

On this record, there having been a lawful arrest at the scene of the accident, we cannot say that the search of defendant was unreasonable or invalid. According to our view we need not pass on the question, as to whether the search was also valid as a result of probable cause for the officers to believe that defendant had committed a felony.

## III

The defendant presented a medical doctor as an alibi witness. The doctor testified that he saw defendant at the latter's home between two and three a.m. on April 9, 1967; that defendant was very nervous and had a lot of pain in his head and neck; that he had head injuries and he saw him the following day in his office at which time he removed fifteen sutures from his scalp; that he gave him a cc. of Demerol and a pill to quiet him down and

make him go to sleep; that he, the doctor, had a cup of coffee with defendant's mother after he gave defendant the injection of Demerol and the pill; and that defendant went to sleep shortly thereafter. In question No. 32, the doctor was then asked by defendant's counsel whether defendant could walk five miles if he had been administered one cc. of Demerol. The doctor replied that this was not a fair question. His answer, insofar as pertinent here, is as follows:

> "That's not a fair question. It depends on the person's habits. Some can tolerate it, some can't. His ability to resist it, I don't know his resistance, but all I know is he went to sleep after I left, because I had coffee with the mother, and I don't know what effect it would have on him a few hours later, going to Pawtucket or any place else. Everybody has a different tolerance to the drug; all I know is I gave him a shot between two and three in the morning, an injection, and he did sleep. I gave him a pill, too, with it, I did quiet him down. I had coffee and I left. Now, I don't know his tolerance to this drug."

The preceding question and answers took place during defendant's direct examination of the doctor. Then, while still on direct examination, defendant's counsel put the following question to the doctor:

> "33 Q Doctor, from your experience as a doctor, and a doctor who has administered Demerol on prior occasions, what other physical effects does the drug Demerol have on a person?"

The state objected to the question as posed, and the trial justice sustained the state's objection saying:

> "I think the doctor has covered it. He said there are too many factors to consider, everybody has a different tolerance to the drug, and he apparently doesn't know what this particular individual's tolerance is."

The defendant took an exception to this ruling. He argues that the trial justice's ruling, which limited the

testimony of an expert witness, was so prejudicial as to deny him a fair trial. We find no error. The only question raised by the instant exception is whether the trial justice abused his discretion in sustaining the state's objection to question No. 33. In view of the doctor's reply to question No. 32, we are not persuaded that he abused his discretion. It is clear from what he said in reply to question No. 32 that, without knowing a person's habits and tolerance to this drug, he could not answer this question with reasonable medical certainty. Moreover, the objection to the question having been sustained, it was incumbent on defendant to make an offer of proof, which he failed to do. In the circumstances, we would have no way of knowing what the doctor's answer would have been. See *State* v. *Frazier*, 101 R. I. 156, 221 A.2d 468.

## IV

The defendant's final argument relates to the admission of two photographs of defendant.[6] As was previously stated, a medical doctor testified for defendant that he had treated defendant on the morning of April 9, 1967, for pain resulting from head injuries and that he saw approximately 15 sutures, which had been administered to defendant by someone other than himself at an earlier date. The photographs were offered by the state and admitted into evidence, over defendant's objection, to rebut this testimony of the doctor. Sergeant Herbert J. Collins testified that he was the desk sergeant on duty the early morning of April 11, 1967; that he had occasion to see defendant at that time; and that he was the officer who put him in the cell. He then was asked the following question and, over defendant's objection, replied in the affirmative:

---

[6]It appears from the photos, which are in evidence, that they were taken on April 11, 1967.

"59 Q Sergeant Collins, I show you these photographs of the defendant. Are they a fair and reasonable representation of how the defendant looked that morning of April 11, 1967?"

Sergeant Collins admitted that he did not take the photographs and that he was not present when they were taken. The defendant objected to the introduction of these photographs on the ground that " * * * it should be made to appear clearly to the trial judge that the picture was a true reproduction of the scene photographed and was properly authenticated according to the rules of evidence * * *." He also argued that in addition to the fact that the photographs were a fair and accurate representation, the state had to show the relevance and materiality.

The state argued that the photographs were relevant, that the medical testimony was that there were around 15 sutures just beyond the hairline, and that the photographs showed the hairline of the defendant.

The trial justice, in reliance on *State* v. *Bennett*, 92 R. I. 316, 168 A.2d 282, admitted the photographs in evidence over defendant's objection and noted his exception. The defendant's arguments here are the same as those he argued before the trial justice. In our judgment they are without merit. The photographs in question were sufficiently authenticated to warrant admitting them in evidence. As the court said in *State* v. *Bennett, supra*:

"Photographs may properly be admitted into evidence without authentication by the photographer himself if the accuracy and correctness thereof can be otherwise established. The matter is one which is largely within the sound discretion of the trial justice. (cites omitted) In the latter case [*State* v. *Esposito,* 73 R. I. 94, 100, 54 A.2d 1, 4] this court said: 'But it is not necessary that the correctness of the photograph be proved either by an expert wit-

ness or by the person who actually took and developed the film. * * * A person who knows the subject of the photograph can testify as to whether it is a true likeness.'" *Id.* at 320, 168 A.2d at 284.

*Bennett,* thus holds that the admissibility of photographs depends upon whether or not they are a fair and accurate representation of that which they intend to show at the time they were taken and that their admissibility is directed to the sound discretion of the trial justice.

The question of relevancy or materiality of photographs is also a matter of judicial discretion. As the court said in *State* v. *Kieon,* 93 R. I. 290 at 295, 175 A.2d 284 at 287:

"It is a well-settled rule in this state that the determination of the relevancy and materiality of photographs is ordinarily a matter within the sound discretion of the trial justice. *State* v. *Greene, supra,* at page 443. It is further settled that where a photograph constitutes competent evidence and reasonably tends to prove or disprove some material fact in issue, it is admissible in evidence even though it may have an influence beyond the strict limits of the purpose for which it was admitted."

We are convinced that the state laid a proper foundation for the admission of the two photographs, both as to the authenticity of the photos and as to their relevance for the purpose for which they were offered. The defendant has failed to persuade us that the trial justice abused his discretion. It would unduly prolong this opinion were we to discuss all of the cases cited by the defendant. Suffice it to say that we have examined them and find that they are of no help to him and, therefore, require no discussion.

All of the exceptions which the defendant has briefed or argued are overruled, and the case is remitted to the Superior Court.

*Herbert F. DeSmone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Scott K. Keefer,* Special Assistant Attorney General, for plaintiff.

*Bevilacqua & Cicilline, Joseph A. Bevilacqua, John F. Cicilline,* for defendant.