Lillian LIM et al.

v.

Stanley P. ANDRUKIEWICZ, Major, Police Department, Providence, Rhode Island, et al.,

and

Richard J. Israel, Attorney General of Rhode Island, Intervenor.

Civ. A. No. 4940.

United States District Court, D. Rhode Island.

June 11, 1973.

Stephen J. Fortunato, Jr., Providence, R. I., for plaintiffs.

Ronald H. Glantz, Acting City Sol., Providence, R. I., for defendants.

W. Slater Allen, Jr., Asst. Atty. Gen., Providence, R. I., for intervenor.

Before McENTEE, Circuit Judge, PETTINE, Chief District Judge, and DAY, District Judge.

## OPINION

PETTINE, Chief District Judge.

The vexing problem before this Court concerns the constitutionality of police detention without arrest, as authorized by R.I.G.L. Title 12, Chapter 7, Section 1 (1956, 1969 Reenactment), which provides:

> *"Temporary detention of suspects.—* A peace officer may detain any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going; and any such person who fails to identify himself and explain his actions to the satisfaction of such peace officer may be further detained and further questioned and investigated by any peace officer; provided, in no case shall the total period of such detention exceed two (2) hours, and such detention shall not be recorded as an arrest in any official record. At the end of any such detention period the person so detained shall be released unless arrested and charged with a crime."

This action seeks a declaration that this statute is unconstitutional, an injunction against the enforcement of such statute against the plaintiffs, and compensatory and punitive damages. Plaintiffs further request an order of this

Court directing the defendants to destroy all photographs taken of plaintiffs and records made concerning their observations of and conversations with plaintiffs.

Jurisdiction is premised on 28 U.S.C. § 1343 and 42 U.S.C.A. § 1983. Because the questioned statute is of state wide application, this three judge federal court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.

At noon on May 11, 1972, the plaintiffs, Lillian Lim, Ann DiDomenico and April Robbins together with other persons assembled in front of the United States District Court House in Providence to peacefully express their opposition to the bombing raids in North Vietnam. The demonstration lasted for approximately forty-five minutes. During that time certain members of the group walked about the sidewalk carrying signs and talked to passing pedestrians. For a short period the plaintiff Robbins and several others lay on the court house steps to "dramatize the effects that weapons of war have on people." There is no evidence before the court that these demonstrators were in any way disruptive of the court house business or of the pedestrian or vehicular traffic. In short the demonstration was peaceful and orderly as must have been observed by the several policemen who were posted in the vicinity.

After leaving the area the three plaintiffs went to a nearby restaurant. While there they were accosted by two of the defendants and transported by car to the detective bureau at the Providence police station. They were held approximately forty minutes while questioned about the demonstration and their future plans. The apprehension and questioning was under the direction and control of the defendant, Major Stanley P. Andrukiewicz, who told the plaintiff Robbins that he would be seeing her in the future. The plaintiffs were not at any time given "Miranda warnings." Although plaintiff Robbins requested permission to make a telephone call, she was not allowed to do so.

Two inconsistent arguments have been raised in defense of this statute. First, it is urged that this Court should abstain because a savings construction might be given to this statute by the Rhode Island Supreme Court. In support of abstention defendants cite City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959). Secondly, it is argued that decisional law subsequent to the enactment of the statute has authoritatively interpreted the statute so as to limit its operation to circumstances constitutionally permitting arrest. The interpretive Rhode Island opinions referred to by defendants are Kavanagh v. Stenhouse, 93 R.I. 252, 174 A.2d 560 (1961), app. dismissed 368 U.S. 516, 82 S.Ct. 529, 7 L.Ed.2d 521; Ahern v. Lynch, 99 R.I. 316, 207 A.2d 296 (1965); Barth v. Flad, 99 R.I. 446, 208 A.2d 533 (1965); Berberian v. Smith, 99 R.I. 198, 206 A.2d 531 (1965); and State v. Giragosian, 107 R.I. 657, 270 A.2d 921 (1970).

Plaintiffs merely refer to *Kavanagh*, supra, which upheld the constitutionality of the challenged statute, and assert that it is settled that the statute permits detention on less than probable cause. This, plaintiffs emphatically argue, cannot be "logically or constitutionally squared with the Fourth and Fourteenth Amendments of the Constitution."

The magnitude and complexity of the constitutional question cannot be treated so blithely. The concept of arrest with all its legal and sociological implications has persistently plagued the courts. Although Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) has eliminated, as determinative, the labels of "arrest" and "detention" in favor of the Fourth Amendment standard of the reasonableness of searches and seizures, there is a treacherous span of uncharted waters before resolution of the issue of the legality of custodial interrogation on a standard falling short of probable cause. See Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969). See also W. LaFave, "Street Encounters" and the

Constitution; Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40 (1968); J. Cook, Varieties of Detention and the Fourth Amendment, 10 Ala.L.Rev. 287 (1971).

One mode of analysis of the challenged statute is to view it as composed of two parts. The first part authorizes the police, on reasonable suspicion of a crime, to stop a person and ask certain limited questions. This could be thought of as authorizing "field detention and interrogation." The second part of the statute allows a policeman who is not satisfied with the answers given to further detain and question the person for a two hour period without arresting that person. This "custodial detention and interrogation" usually takes place at the police station.

Plaintiffs have attacked the entire statute on its face, claiming that it au-

thorizes detention of both types on less than probable cause. Therefore, an assessment of plaintiffs' challenge necessarily involves consideration of what standard authorizes field detention, what standard authorizes custodial detention, the relationship of the two parts of the statute, and the severability of the two portions. This inquiry, in turn, must focus on the opinions of the Rhode Island Supreme Court construing and interpreting R.I.G.L. § 12–7–1.

### The Rhode Island Supreme Court Decisions

The facts of Kavanagh v. Stenhouse, 93 R.I. 252, 174 A.2d 560 (1961), which sustained the constitutionality of R.I. G.L. § 12–7–1, may be found in the margin below.[1] Plaintiff in *Kavanagh* had both been questioned at the scene of an accident and brought to the police

---

1. The facts in *Kavanagh* were as follows:

   "The record establishes that on January 20, 1960 plaintiff and Donald Wheeler, a fellow worker, were involved in a highway accident in the town of Westerly. When James A. Keane of the Westerly police department arrived at the scene, plaintiff was standing outside Wheeler's car at the door on the operator's side and Wheeler was seated behind the wheel. The defendant, a lieutenant in the Westerly police department and apparently the superior officer in charge, arrived shortly thereafter and was advised by Officer Keane that he had Wheeler and plaintiff in custody. It is uncontradicted that Officer Keane advised defendant that both men had been drinking and that, although each had identified Wheeler as the operator, he, Officer Keane, was not sure which of the men was operating the car when it struck and knocked down two telephone poles. Asked why he was not sure, Keane replied, 'We've had trouble in the past on cases like this.'

   It further appears that when the investigation had been completed defendant directed Officer Keane to take both men to a doctor for examination preparatory to a possible charge of operating under the influence of liquor.

   The substance of defendant's testimony, more or less corroborated by Keane and a fellow officer, is that the deten-

   tion of plaintiff was part and parcel of the investigation of the accident.

   It is undisputed that pursuant to defendant's orders Officer Keane drove plaintiff and Wheeler to the police station, where the latter was subsequently charged as the operator and plaintiff was exonerated. Officer Keane testified that he returned to the scene of the accident to continue the investigation but was unable to find any eyewitnesses, which left him with Wheeler's admission that he had been the operator of the car. The defendant corroborated Officer Keane in this regard and added that Keane and Nicholas T. Terranova were in charge of the investigation.

   The latter testified that he was on duty at the station when an unidentified person telephoned to report the accident, and he dispatched Officer Keane to the scene. He further testified that when plaintiff was brought to the station he appeared to have been drinking, was uncooperative, and refused to produce identification until asked to do so a third time. The record also discloses that both plaintiff and Wheeler were locked up in separate cells and that plaintiff remonstrated against his detention. The testimony is in conflict as to the nature and extent of his remonstrance, but it is uncontradicted that within two hours plaintiff was charged with reveling. See State v. Kavanagh [93] R.I. [239], 174 A.2d 286."

station for further questioning. In considering the plaintiff's argument that detention and arrest are synonymous in law and that he was falsely arrested, the Court made no distinction between field detention and interrogation and custodial detention and interrogation. Rather, the Court addressed itself to the question of whether the legislature could constitutionally distinguish between detention and arrest. It is highly unclear from *Kavanagh* whether the distinction made was one without a constitutional difference, that is, whether detention was authorized only on the same probable cause standard used for arrest or whether detention was permissible on a standard less than probable cause.[2]

In a subsequent case, Ahern v. Lynch, 99 R.I. 316, 207 A.2d 296 (1965), the Court interpreted its holding in *Kavanagh* as follows:

"In Kavanagh v. Stenhouse, 93 R.I. 252 [174 A.2d 560], we held that the state could in a proper exercise of its police power distinguish between arrest and a mere detention for investigation when the detaining officer had

'reason to suspect' some criminal act involving the detainee. *We further held in that case that 'reason to suspect' constitutes a reasonable standard for so detaining a person abroad as is consistent with the constitutional right to be free from arrest without warrant except on the basis of probable cause.*" 99 R.I. at 319, 207 A.2d at 297 (emphasis added)

If *Ahern* were the terminal word in the decisional interpretive evolution of the statute at issue, we would think that the "reason to suspect" standard of the first sentence of the statute embodied a probable cause standard as a prerequisite to stopping abroad and making inquiries of a suspect.

*Ahern,* however, is not the latest word. In State v. Ramsdell, 285 A.2d 399 (R.I.1971), the Court took a different view of *Kavanagh*:

"The defendant fails to distinguish a detention from an arrest. We have made such a distinction in Kavanagh v. Stenhouse, 93 R.I. 252, 174 A.2d 560 (1961), when we referred to the fact that § 12–7–1 expressly authoriz-

---

2. As was stated above, the *Kavanagh* court drew no distinction between the standard required to stop a suspect on the street and the standard required to bring that person to the police station for two hours of questioning.

The following language, inter alia, in *Kavanagh* suggests that the standard for detention is the same as for arrest, that is, probable cause:

[quoting from DeSalvatore v. State of Delaware, 2 Storey 560, 163 A.2d 244, 248 (Del.1960):]

"We can find nothing in 11 Del.C. § 1902 which infringes on the rights of a citizen to be free from detention except, as appellant says, 'for probable cause.' Indeed, we think appellant's attempt to draw a distinction between an admittedly valid detention upon 'reasonable ground to believe' and the requirement of § 1902 of 'reasonable ground to suspect' is a semantic quibble. We point out that in Wilson v. State, in referring to the arrest of the defendant, we said, 'Nor can it be doubted that the arrest was legal, that is, upon reasonable suspicion of felony.' [10 Terry 37, 109 A. 2d 381, 390.] In this context, the words

'suspect' and 'believe' are equivalents." 93 R.I. at 257, 174 A.2d at 563 and

"These words [reason to suspect] are connotative with grounds for belief as distinguished from mere suspicion." 93 R.I. at 259, 174 A.2d at 565 However, there is other language that suggests that a standard less than probable cause supports detention:

"In the enactment of G.L.1956, § 12–7–1, however, the general assembly did relax to a degree the limitations to which the police had been subject . . . . * * * Further, we are of the opinion that the words 'reason to suspect' establish a just standard for detention as distinguished from arrest." 93 R.I. at 256, 174 A.2d at 563 and

"If the period of detention is reasonably limited, is unaccompanied by unreasonable or unnecessary restraint, and is based upon circumstances reasonably suggestive of criminal involvement, the legislature may lawfully make a distinction between such mere detention and an arrest." 93 R.I. at 255, 174 A.2d at 562

es a peace officer to detain any person found abroad whom the officer reasonably suspects has committed, is committing, or is about to commit a crime and to ask the suspect for his name, address, the reason for his presence abroad and his destination. While this court believes it highly desirable that a citizen's travel upon the streets of our municipalities be unimpeded, *we wish to make it clear that there is nothing ipso facto unconstitutional in the police briefly stopping a citizen under circumstances not justifying an arrest for the purpose of a limited inquiry during a routine police investigation.* United States v. Oswald, 441 F.2d 44 (9th Cir. 1971). Although the Fourth Amendment prohibits the 'unreasonable seizures' of persons, not every detention of an individual constitutes an unreasonable seizure. People v. Morales, 22 N.Y.2d 55, 290 N.Y.S.2d 898, 238 N.E.2d 307 (1968). *There are circumstances short of establishing the probable cause necessary to make an arrest that can warrant an officer's stopping a pedestrian or motorist on the streets for questioning.* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); People v. Mickelson, 59 Cal.2d 448, 30 Cal.Rptr. 18, 380 P.2d 658 (1963); Stone v. People, Colo., 485 P.2d 495 (1971); People v. Peters, 18 N.Y.2d 238, 273 N.Y.S.2d 217, 219 N.E.2d

595 (1966)." 285 A.2d at 402 (emphasis added)

Because defendant in *Ramsdell* was taken into custody for punching a police officer in the mouth after he had been stopped on the street and questioned and not pursuant to the second part of R.I.G.L. § 12–7–1, this language in *Ramsdell* must refer only to the first part of the statute, authorizing field detention.[3]

The interpretation given to R.I.G.L. § 12–7–1 in both *Ahern* and *Ramsdell* was dicta; the holding in *Kavanagh* was unclear. We are left with the following ambiguities.

■ Under Terry v. Ohio, supra, it may be constitutionally permissible to stop and question in a limited manner a suspect on the street on less than probable cause.[4] Under *Ramsdell*, R.I.G.L. § 12–7–1 is read to authorize the stopping and questioning of a person suspected of a crime for less than probable cause. But *Ahern* and certain language in *Kavanagh* are inconsistent with this reading of the statute. We are not confident of whether the Rhode Island Supreme Court has mandated a standard of questioning of a suspect on the street that is more or less stringent than the *Terry* requirement.

*Terry*, supra, explicitly stated that it was not deciding the constitutional propriety upon less than probable cause of detention and interrogation beyond that

---

3. The facts of Ramsdell are as follows:
  "At approximately one-half hour after midnight on July 29, 1966, in the city of Providence, Officer Leonard F. DeMagistris and Officer Reginald L. Iarocci were on patrol in an unmarked police car. Both officers were in uniform. They had been ordered to maintain a close watch on a construction site located near the intersection of Pine and Claverick Streets because this location had been the scene of recent thefts and acts of vandalism. As they approached the site, they observed four individuals, one or more of whom were throwing rocks at a shed used to house various tools and building equipment. As the police approached, the four 'separated.' Officer DeMagistris 'went' to defendant

and asked his name. Ramsdell replied by asking the officer his name. The officer then asked Ramsdell where he lived. The defendant responded by asking, 'Who wants to know?' and embellished this remark by punching the officer in the mouth causing a laceration of the lip. The defendant was subdued and brought to police headquarters." 285 A.2d at 401–402.
  *Ramsdell* involved an appeal from defendant's conviction for striking a uniformed police officer while the officer was engaged in the performance of his duties.

4. In *Terry, supra,* only one question was asked the suspect on the street: his name.

involved in the "stop and frisk" situation there. 392 U.S. at 19, n. 16, 88 S.Ct. 1868. In our opinion, this question reserved by *Terry*, may well be presented by the second portion of the Rhode Island statute. Surely, custodial detention and interrogation for a two hour period in a station house involves a greater intrusion on personal liberties than being stopped and asked a few questions on the street. See *Terry*, supra, 398 U.S. at 17–18, n. 15, 88 S.Ct. 1868. Further, we note that special constitutional requirements have been thought to apply with respect to other issues involving custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

The second part of the statute allows a person to be taken into custody for two hours and questioned when the policeman is not satisfied with that person's answers. This second part of the statute has not been interpreted by the Rhode Island Supreme Court. At best we could only attempt to predict what the meaning of this standard of "satisfaction" is. Several possible interpretations come to mind. Read by itself, this standard of "to the satisfaction of [the] peace officer" is rather vague, and perhaps subject to attack for unconstitutional vagueness and impermissible discretion in the officer. See Alegata v. Commonwealth, 353 Mass. 287, 231 N.E. 2d 201 (1967). If this standard is read together with the first section of the statute, it is open to the following possible interpretations: that a person may be detained for two hours on the same "reason to suspect" standard, or detained on less than a "reason to suspect" standard, or detained only on greater than a "reason to suspect" standard. Further, it is unclear whether, should one portion of this statute be infirm, the first and second parts of the statute are severable as a matter of Rhode Island law. See Chartier Real Estate Company, Inc. v. Chafee, 101 R.I. 544, 225 A.2d 766, 773 (1967); The Narra-

gansett Indians, 20 R.I. 715, 765, 40 A. 347 (1898). An interpretation of R.I. G.L. § 12–7–1 by the Rhode Island courts that resolved these ambiguities would better put the constitutional challenge to the statute into proper focus.

### Abstention

In light of the ambiguities about the meaning of R.I.G.L. § 12–7–1 set out supra, it is appropriate that we determine whether this Court should abstain and allow the Rhode Island courts to resolve the uncertainties about the proper construction of this statute. In Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972), the United States Supreme Court stated,

> "The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question. Harrison v. N.A.A.C.P., 360 U.S. 167 [79 S.Ct. 1025, 3 L.Ed.2d 1152].'"

As the Court noted in Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970)

> "Abstention certainly involves duplication of effort and expense and an attendant delay. See England v. Louisiana State Board, 375 U.S. 411 [84 S.Ct. 461, 11 L.Ed.2d 440]. That is why we have said that this judicially created rule which stems from Railroad Comm'n v. Pullman Co., 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971], should be applied only where 'the issue of state law is uncertain'."

Despite the delay abstention causes in resolution of the controversy, the doctrine is supported by important policy considerations:

> "Where resolution of the federal constitutional question is dependent upon or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, in-

terference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965) See also Gay v. Bd. of Registration Commrs., 466 F.2d 879, 883 (6th Cir. 1972). Were there no ambiguity in the state law, it would be error to abstain. Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Here, however, there are uncertainties about proper construction of this statute, and there is some likelihood that an interpretation of this statute "would present the federal constitutional issue in significantly altered light." Wulp v. Corcoran, 454 F.2d 826, 833 (1st Cir. 1972).

■ The recognition of the above policy considerations is but the first step in our assessment of whether this is a proper case for abstention. The interests of the plaintiff in gaining access to a federal forum must be weighed against these constitutional interests for

"Wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication and . . . we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." Stapleton v. Mitchell, 60 F.Supp. 51, 55 (D.C.) cited by Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed. 2d 444 (1967).

■ We note especially the caution that must be exercised in abstaining from an action where First Amendment rights are allegedly involved, see Zwickler v. Koota, supra; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), for the "delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right [the plaintiff] seeks to protect." Zwickler v. Koota, supra, 389 U.S. 252, 88 S.Ct. 397.[5]

■ However, the statute before us does not regulate First Amendment freedoms, nor does it have a direct impact on such freedoms. Rather this law is an exercise of the police power of the state in the balancing of the maintenance of law and order against the privacy and rights of its citizens. Admittedly, First Amendment overtones are raised in the factual situation presented to us. Plaintiffs have neither alleged nor proved a pattern of use of this statute to chill First Amendment rights or to abridge other constitutional rights. There has been no proof of a pattern of bad faith enforcement or harassment under this statute. Compare Dombrowski v. Pfister, *supra,* 380 U.S. 490, 85 S.Ct. 1116. The demonstration took place over a year ago. No further incidents between the plaintiffs and the police were put into evidence.

Given both the peripheral effect of this statute on First Amendment rights and the fact that the plaintiffs do not appear to be in danger of suffering any harm from the delay created by resort to the state court, we find that this is a proper case for abstention.

In so abstaining, we also retain jurisdiction and stay all proceedings until

5. Indeed, we are aware that some courts believe that abstention may no longer be a viable doctrine with respect to Civil Rights Act cases, e. g. Church v. Board of Education of Saline Area School District, 339 F.Supp. 538 (E.D.Mich. 1972). We cannot agree in the light of the recent Supreme Court cases of Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) and Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), which held that abstention is the proper course where federal constitutional questions might be obviated or modified by the application and/or construction of state constitutional provisions. For other courts which also espouse this viewpoint, see Reid v. Bd. of Education of City of New York, 453 F.2d 238 (2d Cir. 1972); Koehler v. Ogilvie, 53 F.R.D. 98 (N.D.Ill.1971) aff'd 405 U.S. 906, 92 S.Ct. 938, 30 L. Ed.2d 777 (1970).

the courts of Rhode Island have had an opportunity to determine the proper interpretation of R.I.G.L. § 12–7–1.[6] Lake Carriers' Assn. v. MacMullan, 406 U.S. at 513, 92 S.Ct. 1749; England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Shipman v. Dupre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877 (1950); American Federation v. Watson, *supra*; Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1945); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

6. Under the holding in England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiffs would not be foreclosed from returning to this court following termination of the state proceedings if they had made a proper reservation of rights in the state court. We note that our reservation of jurisdiction may later act to somewhat alleviate the tension which has been recognized as existing between the abstention doctrine and challenges to a statute on grounds of unconstitutional vagueness. See Note, Federal Question Abstention: Justice Frankfurter's Doctrine In An Activist Era, 80 Harv.L.Rev. 604, 611–613; see also Dombrowski v. Pfister, *supra*, 380 U.S. at 489–492, 85 S.Ct. 1116.